**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
**LYNCHBURG DIVISION**

| | |
|---|---|
| LILA WAKELEY, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No.: 6:25-CV-00032 |
| v. | Hon. Norman K. Moon |
| THRIVEWORKS ADMINISTRATIVE SERVICES, LLC and THRIVEWORKS, INC., | |
| Defendants. | |

**DEFENDANTS THRIVEWORKS ADMINISTRATIVE SERVICES, LLC AND THRIVEWORKS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS COMPLAINT**

**EPSTEIN, BECKER & GREEN. P.C.**
1227 25th Street, N.W., Suite 700
Washington, D.C. 20037
Edward John Steren, Esq.
Virginia Bar Number: 88705
Brian G. Cesaratto, Esq. (pro hac vice)
Laura DePonio (pro hac vice)
*Attorneys for Thriveworks Administrative Services, LLC and Thriveworks, Inc.*

## TABLE OF CONTENTS


I. INTRODUCTION ........................................................................................................ 1

II. RELEVANT ALLEGED FACTS........................................................................................ 5

III. LEGAL STANDARD........................................................................................................ 8

IV. LEGAL ARGUMENT........................................................................................................ 9

A. Plaintiff Lacks Article III Standing to Bring Her Claim Under The ECPA................. 9

B. Plaintiff The Court Should Decline Discretion To Exercise Supplemental Jurisdiction Over The State Law Wiretapping Claim.................................................................... 13

C. Plaintiff's ECPA Claim Should Be Dismissed Because Defendant Was A Party to the Communications. ........................................................................................ 15

D. Plaintiff Has Not Plausibly Alleged The Applicability of The ECPA's Crime-Tort Exception ........................................................................................................ 16

E. Plaintiff Does Not Plead Any Facts Demonstrating That Defendants Disclosed Individually Identifiable Health Information to LinkedIn or Google.............................. 18

F. Plaintiff's ECPA and WESCA Claims Should Be Dismissed Because Plaintiff Consented to the Alleged Interception. ......................................................................... 23

G. Plaintiff Fails to Plausible Allege That "Contents" of Communications Concerning Her Particular Health Condition Were Intercepted or Disclosed..................................... 26

H. Plaintiff's Claims are Wholly or Partially Time Barred ............................................ 27

CONCLUSION.................................................................................................................... 31

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Hosp. Assn., v. Xavier Becerra,*
738 F.Supp.3d 780 (N.D. Tex. 2024) (Ex. H) ....7, 20

*Andrews v. Prisma Health,*
No. 6:23-CV-03153-JDA, 2024 WL 3861384 (D.S.C. Aug. 16, 2024) ....10, 11, 12

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)....8

*Beck v. McDonald,*
848 F.3d 262 (4th Cir. 2017) ....8, 9, 10

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)....8, 23

*Caro v. Weintraub,*
618 F. 3d 94 (2d Cir. 2010)....16, 17

*Columbia Pictures Indus. v. Bunnell,*
No. CV 06-1093FMCJCX, 2007 WL 2080419 (C.D. Cal. May 29, 2007)....22

*Couch v. City of Virginia Beach,*
768 F.Supp.3d 741 (2025) ....13

*Cousin v. Sharp Healthcare,*
681 F.Supp.3d 1117 (S.D. Cal. 2023)....22

*DaimlerChrysler Corp. v. Cuno,*
547 U.S. 332 (2006)....10

*DirecTV, Inc. v. Wright,*
350 F.Supp.2d 1048 (N.D. Ga. 2004)....28

*Doe v. Kaiser Found. Health Plan, Inc.,*
No. 23-CV-02865-EMC, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024)....17

*Doe v. Regents of University of California,*
672 F.Supp. 3d 813 (N.D. Cal. 2023)....20

*E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship,*
213 F. 3d 175 (4th Cir. 2000)....8

*Edmonson v. Eagle Nat'l Bank*,
922 F.3d 535 (4th Cir. 2019)....28, 29

*Gaige v. Exer Holding Co., LLC*,
No. 2:24-cv-06099-AH-(AJRx), 2025 WL 559719 (C.D. Cal. Mar. 2, 2025) ....12

*Goines v. Valley Cmty. Serv. Bd.*,
822 F. 3d 159 (4th Cir. 2016)....9

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015), *cert denied*, 580 U.S. 814 (2016)....16

*Harrison v. Westinghouse Savannah River Co.*,
176 F.3d 776 (4th Cir. 1999) ....29

*Hartley v. Univ. of Chi. Med. Ctr.*,
No. 22 C 5891, 2023 WL 7386060 (N.D. Ill. Nov. 8, 2023)....21

*Henderson v. Harmon*,
102 F.4th 242 (4th Cir. 2024) ....13

*Howard v. Lab'y Corp. of Am.*,
No. 1:23-CV-00758, 2024 WL 4250677 (M.D.N.C. Aug. 8, 2024)....15

*Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.*,
892 F.3d 613 (4th Cir. 2018) ....10

*James v. Walt Disney Co.*,
701 F.Supp.3d 942 (N.D. Cal. 2023)....15

*Johnson v. Microsoft Corp.*,
No. C06-0900-RAJ, 2009 WL 1794400 (W.D. Wash. June 23, 2009) ....21

*Jones v. Tyson Foods, Inc*,
378 F. Supp. 2d 705 (E.D. Va. 2004), *aff'd* 126 F.App'x 106 (4th Cir. 2005)....14

*Jurgens v. Build.com, Inc.*,
No. 4:17-CV-00783-AGF, 2017 WL 5277679 (E.D. Mo. Nov. 13, 2017) ....30

*Kurowski v. Rush Sys. for Health*,
683 F.Supp.3d 836 (N.D. Ill. 2023)....21

*Lugo v. Inova Health Care Services*
No. 1:24-cv-700, 2025 WL 905191 (E.D. Va. Mar. 25, 2025)....18

*McCullough v. Branch Banking & Trust Co., Inc.*,
844 F.Supp. 258 (E.D.N.C. 1993), *aff'd*, 35 F.3d 127 (4th Cir.1994), *cert denied*, 513 U.S. 151 (1994) ....14

*Merck & Co. Inc. v. Reynolds*,
559 U.S. 633 (2010)....................28

*In re Meta Pixel Healthcare Litig.*,
647 F.Supp.3d 778 (N.D. Cal. 2022)....................17

*Murphy v Thomas Jefferson Univ. Hosps. Inc.*,
No. 22-4674, 2023 WL 7017734 (E.D. Penn. Oct. 10, 2023)....................22

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016), *cert denied* 580 U.S. 1048 (2017)....................16

*In re Nickelodeon Consumer Priv. Litig.*,
Nos. 12-07829, 13-03755, 13-03729, 13-03757, 13-03731, 13-03756, 2014 WL 3012873 (D.N.J. July 2, 2014)....................26

*O'Leary v. TrustedID, Inc.*,
60 F.4th 240 (4th Cir. 2023)....................8

*Opiotennione v. Bozzuto Mgmt. Co.*,
130 F.4th 149 (4th Cir. 2025)....................9, 10, 13

*Popa v. Harriet Carter Gifts, Inc.*,
52 F.4th 121 (3d Cir. 2022)....................24

*Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*,
711 F.2d 989 (11th Cir. 1983)....................14

*Ridenour v. Andrews Federal Credit Union*,
897 F.2d 715 (4th Cir. 1990)....................14

*Rodriguez v. FastMed Urgent Care, PC.*,
741 F.Supp.3d 352 (E.D.N.C. 2024)....................17

*Roe v. Amgen, Inc.*,
No. 2:23-CV-07448-MCS-SSC, 2024 WL 2873482 (C.D. Cal. June 5, 2024)....................18

*SD3 II LLC v. Black & Decker (U.S.) Inc.*,
888 F.3d 98 (4th Cir. 2018)....................28

*Shanaghan v. Cahill*,
58 F.3d 106 (4th Cir. 1995)....................14

*Silver v. Stripe Inc.*,
No.4:20-cv-08196-YGR, 2021 WL 3191752 (N.D. Cal. July 28, 2021)....................25

*Simons v. Montgomery Cnty., Police Officers*,
762 F.2d 30 (4th Cir. 1985), *cert denied*, 474 U.S. 1054 (1986)....................9

*Smith v. Facebook, Inc.*,
262 F.Supp.3d 943 (N.D. Ca. 2017), *aff'd* 745 F.App'x 8 (9th Cir. 2018) ............................26

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)..........................................................................................9, 10

*Stuart v. Kyocera AVX Components Corp.*,
769 F.Supp.3d 476 ..............................................................................................10

*T.D. v. Piedmont Healthcare, Inc.*,
No. 1:23- CV-5416-TWT, 2024 WL 3972984 (N.D. Ga. Aug. 28, 2024) ...............................1

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)..............................................................................................11

*United States v. Yaitsky*,
196 F. App'x 202 (4th Cir. 2006)...........................................................................17

*VPR Internationale v. Does 1-1017*,
No. 11-2068, 2011 WL 8179128 (C.D. Ill. Apr. 29, 2011) ...................................................21

*Washington v. Union Carbide Corp.*,
870 F.2d 957 (4th Cir. 1989) ..................................................................................14

*Weinberger v. Retail Credit Co.*,
498 F.2d 552 (4th Cir.1974) ....................................................................................29

*Williams v. Dukehealth*,
No. 1:22-CV-727, 2024 WL 898051 (M. D. N. Car., Mar. 1, 2024)......................................16

*Yockey v. Salesforce, Inc.*,
745 F.Supp.3d 945 (N.D. Cal. 2024).........................................................................23

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .....................................................................27

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014) .................................................................................26

**Statutes**

Pennsylvania Wiretapping Act, 18 Pa. Cons. Stat. § 5701, *et seq.*.................................................6

18 Pa. Cons. Stat. § 5704(4) ...........................................................................15, 23

18 Pa. Cons. Stat. § 5703 ...............................................................................15, 26

Electronic Communications Privacy Act, 18 U.S.C. § 2511(1). ...................................................6

18 U.S.C. § 2510(8) ....26

18 U.S.C. § 2511(2)(d) ....15, 16, 18, 23

18 U.S.C. § 2511(3)(a) ....26

18 U.S.C.A. § 2520 ....28

28 U.S.C.A. § 1367 ....13

28 U.S.C.A. § 1367(a) ....13

42 U.S.C. 1320d(4) ....18

42 U.S.C. 1320d(6) ....18

42 U.S.C. § 1320d(6) ....19

42 U.S.C. § 1320d(6)(B) ....21

Virginia Health Records Privacy Act ,Va. Code. Ann. § 32.1-127.1:03 ....23

**Other Authorities**

45 C.F.R. § 160.103 ....19, 21

45 C.F.R. § 164.102 ....18

45 C.F.R. § 164.500. ....18

Federal Rule of Civil Procedure 9(b) ....29

Federal Rule of Civil Procedure 12(b)(1) ....1, 2, 8, 31

Federal Rule of Civil Procedure 12(b)(6) ....1, 3, 8, 22, 31

U.S.C.A. Const. Art. III § 2 ....13

Defendants Thriveworks Administrative Services, LLC and Thriveworks, Inc. (collectively "Thriveworks" or "Defendants") submit this Memorandum of Law in Support of Their Motion to Dismiss Lila Wakeley's ("Plaintiff") Class Action Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).

## I. INTRODUCTION

Thriveworks is a Virginia-based mental health provider of therapy and psychiatry. This action alleges that Thriveworks' use of website software for analytics and marketing purposes constitutes an unlawful wiretap under federal and state wiretapping laws. Plaintiff's complaint seeks to impermissibly extend the reach of these wiretapping laws within this federal district court for the first time to penalize a healthcare provider for employing ubiquitous deployed, commercially available website technologies in a manner that comports with Plaintiff's consent to use of such technologies. Further, it is important to note that these technologies were not even in existence when the wiretapping laws at issue here were originally enacted, and Plaintiff fails to allege any independent criminal or other malicious or tortious purpose with respect to Defendants' use of such technologies. Instead of ascribing any criminal or tortious motive, Plaintiff alleges that Thriveworks used these technologies on its website to enhance its commercial profits by permitting the disclosure of her personal information to third parties Google and LinkedIn to provide targeted online advertising. Plaintiff's lawsuit represents yet another recent effort by plaintiffs' class action attorneys, among similar cases filed in other courts (many of which have been dismissed), to expansively use traditional wiretapping laws to expose healthcare providers to the specter of class action liability for merely conducting normal website operations and online advertising for its healthcare services. One court in Georgia analogized these types of cases to having "sprouted like weeds in recent years." *T.D. v. Piedmont Healthcare, Inc.*, No. 1:23- CV-5416-TWT, 2024 WL

3972984 at *2 (N.D. Ga. Aug. 28, 2024) (granting Piedmont Healthcare's motion to dismiss for failure to state a claim).

As a threshold matter, this Court should dismiss the complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) because Plaintiff fails to allege any "injury in fact" that is concrete, particularized to her individually, or sufficient to establish standing. Indeed, a close reading of the Complaint reveals that putting aside Plaintiff's conclusory and flowery rhetoric (e.g., Compl. ¶¶3-7), generalized descriptions of the large social media companies' business practices, technology and revenues (e.g., *Id.* ¶¶36-49, 56-86), and descriptions of screenshots that are not alleged to be related to Plaintiff's particular activity on Defendants' website (*Id.* ¶¶R47-R53)[1], there are only a few factual allegations related to the Plaintiff individually. Namely, there are allegations that Plaintiff was a Thriveworks patient since 2023, set up a patient account on the Thriveworks' website, and used the online patient portal to book therapy appointments, most recently as of May 22, 2023, and after booking appointments received targeted advertising for "similar products and services." (*Id.* ¶¶10-12). There are no allegations that Plaintiff's particular health conditions were ever disclosed to third parties or that she received targeted advertising related to her individual health conditions.

Plaintiff fails to plausibly allege any actual or impending injury resulting from the alleged disclosure of her browsing activity on Defendants' website. Plaintiff instead merely claims that website browsing activity revealing her personal information was disclosed without her permission to third parties Google and LinkedIn through the operation of these technologies for targeted marketing and website analytics purposes. Plaintiff's claimed injuries, and thus her alleged

[1] Plaintiff's Complaint includes a misnumbered second sequence of paragraphs beginning at Section D under the Factual Allegations Common to All Claims. Plaintiff's paragraph numbers run up to 86, start over at 42 and then run to 124. For clarity, this second sequence is distinguished with a "R" for repeated number (R42-R124). All other paragraphs are cited by their original paragraph numbers.

standing to bring this action, arise from the mere, wholly speculative, and unspecified allegation that this disclosure of her personal information resulted in a potential injury. She cannot, however, establish standing merely by alleging the potential for some future undescribed and non-specified possible injury following a purported violation of the Electronic Communications Privacy Act ("ECPA") or even alleged impermissible disclosures under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). It is beyond cavil that the mere assertion of a statutory violation is, by itself, sufficient to establish standing. Plaintiff's sparse and wholly conclusory allegations are akin to numerous cases in the data breach context where the courts have held that plaintiffs lack standing because they have alleged nothing more than the loss of private information to third parties without alleging any pecuniary or other actual injury. Indeed, Plaintiff's complaint reveals that she consented to receiving targeted advertising from these social media companies, as evidenced in the express terms of both the third party and Defendants' website policies, and, therefore, cannot establish any injury in fact when she received advertising in line with her prior consent. This Court should also decline to exercise supplemental jurisdiction over the remaining state law wiretapping claim because there is no federal interest or judicial economy in litigating this stand-alone state claim in federal court without a corresponding viable federal claim.

Even assuming, *arguendo*, that this Court finds that Plaintiff has standing and/or exercises supplemental jurisdiction over the state law claim, this Complaint should be dismissed in its entirety with prejudice under Federal Rule of Civil Procedure 12(b)(6) because **(i)** Defendants cannot intercept communications to which it is a party; **(ii)** there are no facts plausibly demonstrating the applicability of the crime-tort exception to one-party consent under the ECPA as there is lacking (a) any alleged independent actions outside the alleged interception itself; (b) any motive to injure Plaintiff criminally or tortiously or to act for any purpose other than a

commercial purpose, or (c) any facts plausibly demonstrating the disclosure of individually Identifiable Health Information ("IIHA") in violation of HIPAA's criminal penalties; **(iii)** Plaintiff's claims wholly lack the necessary specificity as to her individually to plausibly establish interception of any content of communications concerning her health conditions; **(iv)** Plaintiff affirmatively gave social media providers (e.g., LinkedIn) prior consent to collect and aggregate her online activity (including metadata, such as her Internet Protocol (IP) address) from any websites she visited, such as Defendant's website, in order to identify her and provide her with targeted advertising; **(v)** "consent" was also provided to Defendants under wiretapping laws because Plaintiff consented to disclosure of her browsing information under the Thriveworks' privacy policy to third parties for advertising purposes; and **(vi)** Plaintiff's claims are barred by the statute of limitations since she does not allege any timely interceptions.

At their core, Plaintiff's claims are fundamentally inconsistent with her own actions. Puzzlingly, Plaintiff sues the local healthcare provider Thriveworks (not either of the large international social media companies) asserting that her privacy was violated when she not only consented to but affirmatively welcomed data sharing and aggregation of her online browsing information when she set up her social media accounts. Plaintiff's conclusory assertion that Thriveworks' disclosure of a users' Internet Protocol ("IP") address used to access its website constituted a disclosure of Protected Health Information ("PHI") in violation of HIPAA is incorrect because IP addresses are generally shared by tens of thousands if not more users and, therefore, do not constitute IIHI under HIPAA.[2] Even if Plaintiff alleged an IP address at issue was associated with her (which she does not), there is no allegation that the Defendants' sharing of such IP address was done for an independent criminal or tortious purpose sufficient to defeat the federal

[2] Plaintiff fails to include any factual allegations concerning any IP address used by her individually.

wiretapping laws' consent exception. Notably, because there is no allegation that Defendants disclosed communications concerning Plaintiff's particular health condition, or associated treatment records to a third party, this matter should be dismissed in its entirety with prejudice.

Plaintiff nevertheless speciously brings an ECPA and state wiretapping claim against Thriveworks for allowing the disclosure to third parties of IP address and other browsing metadata that resulted in her receiving targeted advertising from the same social media companies to which she concedes she willingly provided consent for this type of data sharing and aggregation. Plaintiff cannot, however, proverbially have her "data privacy cake and eat it too."

## II. RELEVANT ALLEGED FACTS

Defendants provide "award-winning therapy or psychiatry" online and in-person to children/teens, adults, couples and families. (Compl. ¶1). This litigation was commenced on April 15, 2025, by Plaintiff Lila Wakeley ("Plaintiff"), a Thriveworks' patient, who brings a class action lawsuit on behalf of all patients who accessed mental health services on the website www.thriveworks.com (the "Website"). (*Id.* ¶R76). Plaintiff alleges that Defendants aided, employed, agreed, and conspired with third parties LinkedIn Corporation ("LinkedIn") and Google LLC ("Google") to "intercept" patients' communications as they sought mental health services from Defendants on the Website, using certain technologies that track user web browsing activity. (*Id.* ¶¶2, 16). The use of these tracking technologies allegedly disclosed patients' browsing activity on the Website (*i.e.*, their website clicks, types of services offered, patient status, prerecorded videos viewed, scheduling of therapy appointments and physician specialties) to third parties LinkedIn and Google. (*Id.* ¶¶R47, R50-R53). Plaintiff alleges that the disclosure of this web browsing activity resulted in the disclosure of patients' protected health information ("PHI") to these third parties for targeted advertising purposes. (*Id.* ¶¶9, R61). Plaintiff alleges violations of

the Electronic Communications Privacy Act, 18 U.S.C. § 2511(1), *et seq.* and the Pennsylvania Wiretapping Act, 18 Pa. Cons. Stat. § 5701, *et seq.* ("WESCA"). (Compl. ¶¶ R113, R116).

More specifically, Plaintiff claims Defendants disclosed patients' sensitive, confidential, and personally identifiable information to LinkedIn and Google for targeted advertising purposes without their consent. (Compl. ¶16). For instance, through the operation of these tracking technologies on the Website, including the Linkedln Insight Tag, when a user who has signed in to LinkedIn is browsing any website where the LinkedIn Insight Tag has been embedded, LinkedIn allegedly receives information about the user's actions on that website, which includes data that can be linked to the user's LinkedIn profile. (*Id.* ¶¶44-46). Plaintiff alleges that, as a result, LinkedIn makes personal inferences about individuals' demographics, intent, behavior, engagement, interests, and buying decisions permitting LinkedIn to target its account holders for advertising. (*Id.* ¶¶38, 49).

Similarly, Plaintiff alleges that through the use of tracking pixels and other software, patients' interactions are transmitted to Google Analytics, where they are processed to be used for analytics services, as well as targeted advertisement. (Compl. ¶¶64, 71-76, 86). According to Plaintiff, Google Analytics is incorporated into the Website, by adding a small piece of software to each page on the site, even when Thriveworks' patients are logged into their patient portals. (*Id.* ¶70). Subsequently, "[t]his code immediately intercepts a user's interaction with the webpage every time the user visits it, including what pages they visit and what they click on," while also collecting "PII [Personally Identifiable Information], such as IP addresses and device information related to the specific computing device a patient is using to access a website" including "the patient's operating system, operating system version, browser, language, and screen resolution." *Id*. Additionally, Plaintiff alleges that since the Website utilizes Google's tracking pixels it obtains

and discloses PII and PHI to Google, including IP address, device information and Google User IDs. (*Id.* ¶76). The IP address, device information and User-IDs information, taken together with the vast quantities of consumer data collected by Google Analytics allegedly can be linked by Google to an individual's specific identity, permitting subsequent targeted for advertising purposes. (*Id.* ¶¶84-86). Plaintiff alleges that she used the same device and browser to access the Website and both her LinkedIn and Gmail accounts. (*Id.* ¶13).

Plaintiff claims that Thriveworks did not comply with its obligations to ensure that the patients' legally protected PHI handled on the Website is protected in accordance with its obligations under HIPAA. (Compl. ¶¶8, 26-27). In December 2022, HHS issued a short-lived "Online Tracking Bulletin"[1] on use of third-party cookies, pixels and other tracking technology on healthcare websites on which Plaintiff extensively relies. (*Id.* ¶¶28-32). The original Bulletin, and its revised version in March 2024, declared that "regulated entities … are not permitted to use tracking technologies in a manner that would result in impermissible disclosures of PHI to tracking technology vendors or any other violations of the HIPAA Rules." *Id.* at ¶28 Since its issuance**,** class action law firms have filed many dozens of cases across the United States against healthcare providers, and Plaintiff elected to rely on this Bulletin even though it was judicially vacated.[3]

Plaintiff allegedly agreed to LinkedIn's User Agreement, Privacy Policy and Cookie Policy when she signed up as a social media account holder. (Compl. ¶¶51-54).[4] At that time, she agreed that LinkedIn could collect and aggregate her personal data concerning her device and activity across various websites and use this tracking technology to identify her and provide her with

[3] Three (3) versions of the Bulletin are attached to the Declaration of Brian G. Cesaratto, Esq. ("Cesaratto Decl.") Exs.F-H. Plaintiff, however, apparently cites to only the original version in the text of her Complaint (Ex. F), does not reference the revised version (Ex. G) and did not acknowledge that prior to the filing of her 2025 Complaint the original and revised HHS Bulletin was vacated in *Am. Hosp. Assn., v. Xavier Becerra*, 738 F.Supp.3d 780 (N.D. Tex. 2024) (Ex. H). The link in footnote 8 of the Complaint would access March 2024 Bulletin noting the impact of the *Becerra* decision (Ex. H).
[4] *See* Cesaratto Decl., Exs. B-E.

targeted advertising. (*Id.*).[5] Plaintiff references Thriveworks Website Uniform Resource Locater (URLs), includes links thereto and alleges that Thriveworks represented to Plaintiff on its Website that it would keep her information secure and confidential. (*Id.* n.1, n.3, ¶7, R42-43).[6]

## III. LEGAL STANDARD

Challenges to standing are reviewed as questions of subject matter jurisdiction under Rule 12(b)(1). *See O'Leary v. TrustedID, Inc.*, 60 F.4th 240, 242 (4th Cir. 2023). In assessing a Rule 12(b)(1) facial challenge to standing, courts accept factual allegations as true but "do not [ ] apply the same presumption of truth to 'conclusory statements' and 'legal conclusions' contained in [the] complaint." *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)), *cert denied*, 582 U.S. 932 (2017). When evaluating a class action complaint, the court "analyze[s] standing based on the allegations of personal injury made by the named plaintiffs." *Id.* at 269 (citing *Doe v. Obama*, 631 F.3d 157, 160 (4th Cir. 2011)).

A motion to dismiss under Federal Rule of Civil Procedures 12(b)(6) tests the legal sufficiency of a complaint. To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard does not require the inclusion of detailed factual allegations in a pleading, but the complaint must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555); *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F. 3d 175, 180 (4th Cir. 2000) (the court "need not accept the

[5] The LinkedIn User Agreement, Privacy Policy and Cookies Policy are attached to the Cesaratto Decl., Exs. B-E.

[6] Because the Thriveworks Website Privacy Policy & Terms of Use document is available at the urls referenced in the Complaint (fn1, fn3), and is thereby either incorporated into or integral to the Complaint Defendants have attached it to the Declaration of Stefanie Frank ("Frank Decl.) as Ex A.

legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments"). In deciding a motion to dismiss, the Court may consider facts alleged in the complaint, exhibits to the complaint and documents incorporated in the complaint by reference. *Simons v. Montgomery Cnty., Police Officers*, 762 F.2d 30, 31-32 (4th Cir. 1985), *cert denied*, 474 U.S. 1054 (1986). Courts may also consider documents that are "integral to" the complaint. *Goines v. Valley Cmty. Serv. Bd.*, 822 F. 3d 159, 166 (4th Cir. 2016).

## IV. LEGAL ARGUMENT

### A. Plaintiff Lacks Article III Standing to Bring Her Claim Under The ECPA

Plaintiff lacks standing to bring her federal ECPA claim because she does not allege any actual harm or sufficiently allege a concrete and particularized intangible harm arising from an ECPA violation sufficient to establish injury-in-fact. Plaintiff must show: "(1) an injury-in-fact (i.e., a concrete and particularized invasion of a legally protected interest); (2) causation (i.e., a fairly traceable connection between the alleged injury-in-fact and the alleged conduct of the defendant); and (3) redressability (i.e., it is likely and not merely speculative that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit)." *See Beck*, 848 F.3d at 269 (citation omitted) (no Article III injury exists based on an alleged "increased risk of future identity theft and the cost of measures to protect against it") *Id.* at 273; *see also Opiotennione v. Bozzuto Mgmt. Co*., 130 F.4th 149, 154-155 (4th Cir. 2025) (holding that the discriminatory classification itself resulting from Facebook's online targeted advertising technology that caused plaintiff not to receive certain advertisements does not satisfy the injury in fact requirement). "To establish injury-in-fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S.

555, 560 (1992) ("We have made it clear time and time again that an injury in fact must be both concrete *and* particularized") *Id.* at 340. Concreteness and particularity are two different requirements that each must be met. *Opiotennione*, 130 F.4th at 153. "If a dispute is not a proper case or controversy, the courts have no business deciding it, or expounding the law in the course of doing so." *DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332, 341 (2006).

Mere compromise or loss of personal information, without more, fails to satisfy the injury-in-fact element. *Stuart v. Kyocera AVX Components Corp.*, 769 F.Supp.3d 476, 485 (2025; *see also Beck*, 848 F.3d at 274-75 ("mere theft of [personal information], without more, cannot confer Article III standing"); *Cf. Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.*, 892 F.3d 613, 621 (4th Cir. 2018) (plaintiffs established standing by alleging they suffered actual harm from the compromise of personal information in the form of identity theft and credit card fraud). In *Andrews v. Prisma Health*, for example, the district court held that plaintiff lacked standing for her ECPA claims because she failed to plead a plausible injury-in-fact to her privacy interests. *Andrews v. Prisma Health*, No. 6:23-CV-03153-JDA, 2024 WL 3861384 at *10 (D.S.C. Aug. 16, 2024). In *Andrews*, plaintiff alleged that "unbeknownst to Plaintiff and other class members and without their consent, Defendant installed hidden source code on the Website, including the Facebook Tracking Pixel" and Facebook Conversions Application Programming Interfaces, "that redirect and disclose Plaintiff's and class members' confidential" PII and PHI to undisclosed third parties such as Facebook (internal citations omitted), and that "Facebook then uses the Private Information 'to build profiles for the purposes of retargeting and future marketing,' which ultimately benefits Defendant by reducing advertising and retargeting costs." [internal citations omitted]. *Id* at 1. In evaluating standing, the court in *Andrews* stated:

> "'[t]he intangible harm of enduring a statutory violation, standing alone, typically won't suffice under Article III—unless there's separate harm (or a materially

> increased risk of another harm) associated with the violation.' *O'Leary*, 60 F.4th at 243. In *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), the Supreme Court clarified when a statutory violation satisfies Article III standing requirements. *Garey v. James S. Farrin, P.C.*, 35 F.4th 917, 921 (4th Cir. 2022. As the Fourth Circuit has explained, plaintiffs proceeding under a statutory cause of action can establish a cognizable injury by 'identif[ying] a close historical or common-law analogue for their asserted injury' for which courts have 'traditionally' provided a remedy. [*TransUnion LLC*, 594 U.S. at 424]. A plaintiff who does so has standing even if the precise injury would not, absent the statute, be sufficient for Article III standing purposes. *Id.* . . . Concrete, intangible harms with a close relationship to harms traditionally recognized as bases for lawsuits include 'reputational harms, disclosure of private information, and intrusion upon seclusion.' *TransUnion LLC*, 594 U.S. at 425."

*Andrews*, 2024 WL 3861384, at *4.

The *Andrews* court rejected plaintiff's arguments that she had plausibly alleged an injury in fact bearing a close relationship to traditionally recognized harms such as reputational harms, disclosure of private information, or intrusion upon seclusion. *Andrews*, 2024 WL 3861384, at *4-7. The court reasoned that although plaintiff alleged that her private information was disclosed to Facebook as a result of the tracking technologies, plaintiff failed to include allegations concerning what happened with her private information after it was disclosed to Facebook. For example, nothing in the Complaint specifically alleged that Facebook sold her particular private information and nothing in the Complaint alleged that any person at Facebook (as opposed to a computer) accessed or viewed her Private Information. *Id.*at *7. Therefore, the court held that "based on the allegations in the Complaint, Plaintiff's alleged harm is not closely related to the traditional tort of disclosure of private information." *Id*. The court also rejected analogous invasion of privacy claims. *Id*. at *8.

Plaintiff here makes no allegations of fact that she suffered any tangible or pecuniary harm. There are no allegations, moreover, as in *Andrews*, that as a result of an ECPA breach, Plaintiff's information was sold by LinkedIn or Google, or that any person (as opposed to a computer) at

either LinkedIn or Google or another third party viewed her information. Indeed, Plaintiff lacks standing because she merely claims damages due to an alleged disclosure combined with an alleged breach of privacy in violation of HIPAA with nothing more. (Compl. ¶¶16, 20, 26-27). The allegations of the present matter are similar to the plaintiff in *Andrews*, and using the same Fourth Circuit authority for analysis, it is clear that Plaintiff lacks standing under the ECPA. Nothing in the Complaint alleges *how plaintiff was harmed* as a result of her PII and PHI being disclosed to LinkedIn and Google. Moreover, although the Complaint contains generalized allegations of the LinkedIn and Google business practices when using the tracking technologies (e.g., LinkedIn and Google obtain the PII and PHI and then collectively utilize "all of these tracking features in order to build robust consumer profiles it can then leverage for targeted advertising purposes"), nothing in the Complaint specifically alleges *that Plaintiff was harmed* by any targeted advertising. Indeed, there was certainly no harm because Plaintiff, by her own admissions, agreed to and consented to receive targeted advertising when she established her LinkedIn account. (*See* Compl. ¶¶13, 53). Thus, none of the advertising she received was unwanted.

Plaintiff's singular inconsistent allegation (Compl. ¶12) that she received advertising for similar products and services after booking an appointment is, in any event, so generalized and non-specific, lacking any temporal proximity or detail, that it does not push her alleged intangible harm into the plausible. Cf. *Andrews* (relying as an additional factor in its holding that Plaintiff had no standing that she did not allege that she received targeted advertising after using the website). Plaintiff does not allege, for example, that she received advertisements related to her particular health condition or where the advertisements originated from or were viewed. *Cf., e.g., Gaige v. Exer Holding Co., LLC*, No. 2:24-cv-06099-AH-(AJRx), 2025 WL 559719 at *2 (C.D.

Cal. Mar. 2, 2025) (finding standing, in part, because plaintiff alleged that the disclosures led to him receiving targeted advertisement related to the very conditions he had searched the website). Rather, her allegation is merely that she booked a mental health appointment on Defendants' Website and then at some later, unspecified date received advertising for similar products and services. These allegations are so vague, generalized and otherwise insufficient to plausibly establish standing. Plaintiff's class action allegations, moreover, "adds nothing to the question of standing" because the named plaintiff must still show that she personally was injured. *Opiotennione*, 130 F.4th, at 153 n.4.

Accordingly, this court should conclude that these allegations fail to establish injury-in-fact because they are conjectural and hypothetical and do not allege cognizable harm in a sufficient manner to allow this Complaint to proceed.

### B. The Court Should Decline Discretion To Exercise Supplemental Jurisdiction Over The State Law Wiretapping Claim

When a federal claim is dismissed for lack of standing, the court lacks original jurisdiction over the federal claim. U.S.C.A. Const. Art. III § 2, cl. 1. This lack of jurisdiction extends to any state law claims that might be considered under supplemental jurisdiction. (*See* Compl. ¶17 (requesting the court exercise supplemental jurisdiction). Under 28 U.S.C.A. § 1367(a), supplemental jurisdiction is exercised when the district court has original jurisdiction over a federal claim that forms part of the same case or controversy. 28 U.S.C.A. § 1367. The Fourth Circuit has consistently declined, moreover, to exercise jurisdiction over state law claims where it has dismissed all claims over which is has original jurisdiction. *Couch v. City of Virginia Beach*, 768 F.Supp.3d 741, 755 (2025). As the Fourth Circuit has explained, "[g]enerally, when a district court dismisses all federal claims in the early stages of litigation[,] ... it should decline to exercise jurisdiction over any remaining pendent state law claims by dismissing those claims without

prejudice." *Henderson v. Harmon*, 102 F.4th 242, 251 (4th Cir. 2024) (quoting *Banks v. Gore*, 738 F. App'x 766, 773 (4th Cir. 2018); *Jones v. Tyson Foods, Inc*, 378 F. Supp. 2d 705, 710 (E.D. Va. 2004), *aff'd* 126 F.App'x 106 (4th Cir. 2005) (declining supplemental jurisdiction is subject to exercise of the court's discretion)(citing 28 U.S.C. § 1367(c)(3)).

This court has "wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995). In determining whether to exercise supplemental jurisdiction, the court analyzes "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Id.* (internal citations omitted). Additionally, the existence of any state limitations bars to refiling in state court should also be considered as another equitable factor. *Ridenour v. Andrews Federal Credit Union*, 897 F.2d 715, 722 (4th Cir. 1990); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 1000 (11th Cir. 1983) ("although the potential statute of limitations bar is a necessary consideration, it is not the only consideration."). Courts should also "account for the amount of time and energy that has already been expended, and decide whether it might be more efficient to simply retain jurisdiction." *Shanaghan*, 58 F.3d at 112; *Washington v. Union Carbide Corp.*, 870 F.2d 957, 962 (4th Cir. 1989). Finally, there could be other considerations that "may arise on a case-by-case basis, such as the existence of some significant issue of state law best resolved in state court, that could inform the trial court's determination whether to keep or dismiss the case entirely." *Shanaghan*, 58 F.3d at 112; *McCullough v. Branch Banking & Trust Co., Inc.*, 844 F.Supp. 258, 260–62 (E.D.N.C. 1993), *aff'd*, 35 F.3d 127 (4th Cir.1994) (describing discretionary analysis under § 1367(c)(3)), *cert denied*, 513 U.S. 151 (1994).

Here, under all of these factors, the court should decline to exercise supplemental jurisdiction over the WESCA claim. It would not be in the interests of comity and judicial economy for the federal court to exercise supplemental jurisdiction over the WESCA claim (18 Pa. Cons. Stat. § 5703) because courts have held (unlike the ECPA claim) that the mere violation of the statute itself is sufficient to confer standing, regardless of whether the plaintiff has suffered actual damages. *James v. Walt Disney Co.*, 701 F.Supp.3d 942, 951-952 (N.D. Cal. 2023); *Howard v. Lab'y Corp. of Am.*, No. 1:23-CV-00758, 2024 WL 4250677, at *6 (M.D.N.C. Aug. 8, 2024). There is no indication from the Complaint, moreover, that it would be more efficient for the federal court to retain jurisdiction over the WESCA claim, and in fact, it may actually be less efficient because resolution of the WESCA claim will involve issues of state law best resolved by the state courts. Indeed, it may take extra time and energy for the federal court to undertake consideration of the claims because the ECPA and WESCA differ in many ways, including their requirements for standing (*infra.*), and the fact that the ECPA follows the one-party consent rule, while WESCA follows a two-party consent rule, and exceptions may differ. 18 U.S.C. § 2511(2)(d); 18 Pa.C.S. § 5704(4). Indeed, these are particularized state law matters arising from a state (Pennsylvania) located in the Third Circuit, not the Fourth Circuit. Accordingly, based on the foregoing reasons, this court should decline to exercise supplemental jurisdiction over the WESCA claim.

### C. Plaintiff's ECPA Claim Should Be Dismissed Because Defendant Was A Party to the Communications.

Even assuming, *arguendo*, that this Court finds that Plaintiff established standing, the ECPA does not apply where the alleged interceptor was a party to the communication. 18 U.S.C. § 2511(2)(d). Specifically, ECPA provides:

> "It shall not be unlawful ... for a person not acting under color of law to intercept a wire, oral, or electronic communication *where such person is a party to the communication* or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the

purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." (emphasis added).

Under ECPA's a one-party consent framework, there is no illegal interception, as a matter of law, where one-party to the communication consents to the capture of such information. *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 274 (3d Cir. 2016) (upholding the district court's dismissal of plaintiffs' ECPA claim because the defendant operator of the third-party tracking technology was "either a party to all communications with the plaintiffs' computers or was permitted to communicate with the plaintiffs' computers by [the defendant website operator], who was itself a party to all such communications"), *cert denied* 580 U.S. 1048 (2017); *Williams v. Dukehealth*, No. 1:22-CV-727, 2024 WL 898051 at *8 (M. D. N. Car., Mar. 1, 2024) (dismissing plaintiff's ECPA claim because defendant was a party to the communication and finding that "[c]ourts interpreting [the ECPA] have held that mere receipt of a communication does not constitute a violation of [the ECPA]") (citation omitted). Here, Plaintiff expressly alleges Defendants violated the ECPA through Defendants' interception of communications with Plaintiff on its Website, which Defendants are alleged to have intentionally disclosed to LinkedIn and Google. (*See, e.g.*, Compl ¶¶ 49-50, 93, 99). The one-party consent rule applies because the only plausible reading of Plaintiff's allegations is that Plaintiff's communications were made to Defendants via the Website and subsequently Defendants redisclosed such information to third parties based on Plaintiff's consent.

### D. Plaintiff Has Not Plausibly Alleged The Applicability of The ECPA's Crime-Tort Exception

To trigger the crime-tort exception, the criminal or tortious acts must be "secondary to the acquisition of the communication." *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 145 (3d Cir. 2015), *cert denied*, 580 U.S. 814 (2016); *Caro v. Weintraub*, 618 F. 3d 94, 100 (2d Cir. 2010); *In re Google Inc.*, 806 F.3d at 145 ("[A]ll authority of which we are aware

indicates that the criminal or tortious acts contemplated by §2511(2)(d) are acts secondary to the acquisition of the communication involving tortious or criminal use of the interception's fruits"). Further, in determining whether a party's actions were taken with a criminal or tortious purpose, "courts look to the intended use ... not whether the taping itself violates a state law." *United States v. Yaitsky*, 196 F. App'x 202, 203 (4th Cir. 2006) (citations omitted). "Thus, to survive a motion to dismiss, a plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is independent of the intentional act of recording." *Caro*, 618 F.3d at 100. A plaintiff must plead, therefore, that Defendants engaged in a criminal or tortious act independent of the use of tracking technologies on its Website and subsequent disclosures to third parties.

Courts have dismissed ECPA claims at the motion to dismiss stage, where alleged violations of HIPAA or state health privacy laws form the basis of the crime-tort exception. Specifically, where courts have found that the purpose of the alleged interception was for commercial gain, not to commit a crime or tort, the crime-tort exception is not applicable. These courts found that a commercial or marketing related motive is not criminal or tortious such that the crime-tort exception can be invoked. *See e.g., Rodriguez v. FastMed Urgent Care, PC.*, 741 F.Supp.3d 352, 363-364 (E.D.N.C. 2024) (dismissing the ECPA claim holding that allegations of interception through tracking technologies for a commercial purpose, not for purposes to commit a crime or tort, do not establish the crime-tort exception); *Doe v. Kaiser Found. Health Plan, Inc.*, No. 23-CV-02865-EMC, 2024 WL 1589982, at *10 (N.D. Cal. Apr. 11, 2024) ("The collection of information itself was not for the purpose of committing a crime or tort (at least, as pled); rather, the apparent purpose was to use the information collected for market research and consumer analysis solely for the benefit of Kaiser in better reaching and serving its patients."); *In re Meta*

*Pixel Healthcare Litig.*, 647 F.Supp.3d 778, 797 (N.D. Cal. 2022) ("Multiple courts in this district have found that the crime-tort exception . . . is inapplicable where the defendant's primary motivation was to make money, not to injure plaintiffs tortiously."); *Roe v. Amgen, Inc.*, No. 2:23-CV-07448-MCS-SSC, 2024 WL 2873482, at *6 (C.D. Cal. June 5, 2024) (finding "the crime-tort exception is inapplicable where a defendant's primary motivation is to make money rather than to injure plaintiff's tortiously or criminally").[7]

Plaintiff has failed to plausibly plead either an independent criminal or tortious act secondary to the interception ***and*** a criminal or tortious motive attributed to such secondary act. Because Plaintiff plausibly alleges, at most, a commercial motive for the alleged interception, Plaintiff has failed to invoke the crime-tort exception to bypass ECPA's one-party consent framework. *See*, *e.g.*, Compl. ¶2 (alleging that Defendants acted "in pursuit of profit").

### E. Plaintiff Does Not Plead Any Facts Demonstrating That Defendants Disclosed Individually Identifiable Health Information to LinkedIn or Google

Indeed, as a threshold matter, Plaintiff failed to plead facts to establish a HIPAA violation involving the disclosure of her Individually Identifiable Health Information ("IIHI") sufficient to fall within the exception to 18 U.S.C. §2511(2)(d). This is true even if Plaintiff had plausibly pled both a secondary act and an independent criminal or tortious motivation (which she has not). Critically, the HIPAA Privacy Rule protects only PHI that is IIHI and does not extend to all health-related information. *See* 42 U.S.C. 1320d(4)*;* 45 C.F.R. § 160.103 *et seq.*, § 164.102 *et seq.*, § 164.500 *et seq*. Correspondingly, HIPAA criminal penalties apply only to knowing and unlawful disclosure of IIHI (s*ee* 42 U.S.C. 1320d(6)), and, therefore, Plaintiff cannot avail herself of the

[7] Although there is a split of authority within the 4th Circuit on allegations of commercial use or gain defeating an ECPA claim, *Cf. Lugo v. Inova Health Care Services* No. 1:24-cv-700 (PTB/WEF), 2025 WL 905191 (E.D. Va. Mar. 25, 2025), Defendants respectfully maintain that the Rodrigquez court's view is the correct one on this substantive issue.

exception to one party consent, unless there has been in the first instance a disclosure of IIHI. PHI is a "subset" of health information maintained by a covered entity and is limited to only "Individually Identifiable Health Information (IIHI)" which in turn is defined as health information that:

> (1) is created or received by a health care provider [or other covered entity]; and (2) relates to the past, present, or future physical or mental health or condition *of an individual*; the provision of health care *to an individual*; or the past, present, or future payment for the provision of health care *to an individual*; and (i) that *identifies the individual*; or (ii) with respect to which there is a reasonable basis to believe the information can be used *to identify the individual*.

45 C.F.R. § 160.103 (emphasis added); *accord* 42 U.S.C. § 1320d(6). IIHI is limited, therefore, to health information that is <u>*both*</u> related to a *specific person's health or condition* and either actually identifies, or is reasonably capable of being used to identify, *that individual.* If the health information does not relate to any particular individual, it is not PHI and a covered entity may freely disclose it. Plaintiff has failed to plausibly plead any facts demonstrating the disclosure of PHI.

Plaintiff's reliance on the original 2022 version of the HHS Bulletin (cited in the text of the Complaint) to attempt to establish unauthorized disclosure of PHI and a corresponding HIPAA violation to avoid the ECPA's one-party consent exception is wholly misplaced. At the outset, HHS realized that its original guidance was incorrect, and revised it in March 2024, directly undercutting the allegations in Plaintiff's pleading concerning IP address and visits to the unauthenticated pages on the Website. The revised Bulletin (Cesaratto Decl. Ex. G) provides that: "*the <u>mere fact</u> that an online tracking technology <u>connects the IP address</u> of a user's device (or other identifying information)* with a visit to a webpage is not a sufficient combination of information to constitute IIHI if the visit to the webpage is not related to an individual's past, present, or future health, health care, or payment of health care." (Emphasis added).

The guidance in the HHS Bulletin was later vacated by a federal court in 2024 well before Plaintiff filed her complaint (which quizzically Plaintiff makes no mention of in her Complaint). *See Becerra*, 738 F. Supp. 3d at 807. On June 20, 2024, in *Becerra*, the U.S. District Court for the Northern District of Texas vacated the HHS Bulletin extensively relied upon by Plaintiff to support her claims. 738 F. Supp. 3d at 807. The court has vacated the HHS Bulletin that HIPAA obligations are triggered where "an online technology connects (1) an individual's IP address with (2) a visit to a UPW [unauthenticated public website] addressing specific health conditions or healthcare providers" (the "Proscribed Combination"), on the grounds, among others, that this guidance is inconsistent with HIPAA's definition of IIHI and PHI. 738 F. Supp. 3d at 789. The court held, "the Proscribed Combination facially violates HIPAA's unambiguous definition of IIHI." *Id* at 800. The court vacated even HHS's Revised Bulletin which "softened language from the Original," and "suggests the IIHI test is subjective." *Id* at 789. Thus, Plaintiff's purported support for the assertion that the disclosure of IP address and other metadata is IIHI is no longer supported.

The HHS interpretation of the applicability of HIPAA to online technologies is, in any event, not an adequate basis to support the crime tort exception here, and this Court should reject applying HHS's judicially-vacated interpretation of HIPAA in the ECPA and wiretapping context. In considering the impact of the HHS Bulletin in a similar case involving the same technologies and types of alleged disclosures (i.e., IP addresses, device IDs, and unique identifying codes) on both user authenticated and unauthenticated pages, the Northern District of Illinois held:

> The interpretation of IIHI offered by HHS in its guidance goes well beyond the meaning of what the statute can bear. As just described, IIHI under section 1320d(6) must, in addition to other requirements, 'relate[] to the past, present, or future *physical or mental health or condition of an individual, the provision of health care* to an individual, or the past, present, or future payment *for the provision of health care* to an individual.' 42 U.S.C § 1320d(6) (emphasis added). The type of metadata that [plaintiff] alleges was transmitted via third-party source code does not in the least bit fit into that category. And while the actual *substance* of [plaintiff's] private

> communications related to her care – like the above noted MyChart/blood pressure example from [*Doe v. Regents of University of California*, 672 F.Supp. 3d 813 (N.D. Cal. 2023)] would like fall under section 1320d(6)'s definition of IIHI, [plaintiff] has failed to allege that anything of that nature was actually disclosed.

*Kurowski v. Rush Sys. for Health*, 683 F.Supp.3d 836, 844 (N.D. Ill. 2023) (emphasis added) (holding that because the HHS interpretation of HIPAA is not supported, defendant falls within the one party exception to the Wiretap Act, and dismissing the wiretap claims); *see also Hartley v. Univ. of Chi. Med. Ctr.*, No. 22 C 5891, 2023 WL 7386060, at *2 (N.D. Ill. Nov. 8, 2023) (holding that disclosure of "IP addresses" and "URLs" in connection with the use of the Meta Pixel is insufficient to "plausibly" allege a HIPAA violation).

Indeed, an IP address is not "information" that either identifies or provides a reasonable basis to identify "the individual" whose own health, healthcare, or payment for health care actually "relates to" a website visit. 42 U.S.C. § 1320d(6)(B); *accord* 45 C.F.R. § 160.103. No facts are pled here demonstrating that Plaintiff's IP address identifies or has a reasonable basis to identify Plaintiff (in particular) (and as an *individual*) whether in connection with her own health or condition or otherwise. Given the utter absence of any assertion that Plaintiff used her own fixed IP address to visit the website, the IP address is not her IP address, but instead nothing more than one of the dynamically assigned numerous IP addresses available to all the Internet Service Provider subscribers and is not individually identifiable. *See Klimas v. Comcast Cable Comms*., Inc., 465 F.3d 271, 273 (6th Cir. 2006) ("[A]ny computer from which a person accesses the internet is assigned an IP address, which may be either 'static' (remain constant) or 'dynamic' (change periodically)"). Numerous federal courts have held that an IP address does not in and of itself identify an individual. *See id*. at 276 n. 2 (noting that "IP addresses do not in and of themselves reveal" personally identifiable information, such as "a subscriber's name, address [or] social security number," without more); *VPR Internationale v. Does 1-1017,* No. 11-2068, 2011 WL

8179128, at *1 (C.D. Ill. Apr. 29, 2011) (denying motion to certify class action because IP addresses did not identify potential plaintiffs); *Johnson v. Microsoft Corp*., No. C06-0900-RAJ, 2009 WL 1794400, at *4 (W.D. Wash. June 23, 2009) ("In order for 'personally identifiable information' to be personally identifiable, it must identify a person. But an IP address identifies a computer, and can do that only after matching the IP address to a list of particular Internet service provider's subscribers. Thus, . . . an IP address is not personally identifiable[.]"); *Columbia Pictures Indus. v. Bunnell*, No. CV 06-1093FMCJCX, 2007 WL 2080419 at *3 n.10 (C.D. Cal. May 29, 2007) ("As an IP address identifies a computer, rather than a specific user of a computer, it is not clear that IP addresses . . . are encompassed by the term 'personal information' in defendants' website's privacy policy."). Indeed, an IP address is nothing more than a number that identifies the address of a device connected to the Internet. An "IP address" is not PHI for that reason alone.

In *Cousin v. Sharp Healthcare,* 681 F.Supp.3d 1117, 1125 (S.D. Cal. 2023), the court dismissed common law and statutory claims under Rule 12(b)(6) based on similarly vague and insufficient allegations that a healthcare organization used the Meta Pixel on its public website. The Court found, in reasoning equally applicable here, that the plaintiffs failed "to state *what* information [they each] provided to Defendant, via their browsing activity, that was subsequently disclosed to Meta" and the court concluded that the class action complaint should be dismissed because the routine browsing activity at issue was not protected sensitive information and that the complaint merely posited hypothetical damages. *Id*. at 1123*; see also Murphy v Thomas Jefferson Univ. Hosps. Inc*., No. 22-4674, 2023 WL 7017734 at *3 (E.D. Penn. Oct. 10, 2023) (dismissing common law and statutory claims based on use of Meta Pixel and holding that the phrase "highly confidential information" and allegations in the complaint that communications involved a "wide range of personal privacy healthcare information" and "personally identifiable patient health

information" relating to "medical symptoms, conditions, and concerns, medical appointments, medical tests and test results, doctor's visit notes, medications and treatments, and health insurance" were too vague and conclusory to satisfy the *Twombly* standard). Plaintiff's Complaint here should be dismissed for the same exact reasons.

The result is the same as to any alleged violation of privacy under the Virginia Health Records Privacy Act (VHRPA). Va. Code. Ann. § 32.1-127.1:03. Under the VHPRA, a covered entity may not disclose an individual's "health record." "Health record" means any written, printed or electronically recorded material maintained by a health care entity in the course of providing health services to an individual concerning the individual and the services provided [and] also includes the substance of any communication made by an individual to a health care entity in confidence during or in connection with the provision of health services or information otherwise acquired by the health care entity about an individual in confidence and in connection with the provision of health services to the individual." *Id*. Plaintiff does not plausibly allege any facts demonstrating a privacy violation under the VHRPA, and, in any event, unlike HIPAA there is no criminal penalty for such a disclosure under the statute.

### F. Plaintiff's ECPA and WESCA Claims Should Be Dismissed Because Plaintiff Consented to the Alleged Interception.

There is no liability under the ECPA where the defendant is a party to the communication "unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d). Similarly, under WESCA, interception is permitted "where all parties to the communication have given prior consent to such interception." 18 Pa. Cons. Stat. § 5704(4); *Yockey v. Salesforce, Inc.*, 745 F.Supp.3d 945, 956–57 (N.D. Cal. 2024). As under ECPA, consent is a complete defense to WESCA. 18 Pa. Cons. Stat. § 5704(4) (establishing that there is no liability

"where all parties to the communication have given prior consent to such interception"). "Prior consent, including implied consent, can be demonstrated when the person being recorded knew or should have known[] that the conversation was being recorded." *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 132 (3d Cir. 2022) (quotation marks and citation omitted). If Plaintiff and Defendants consented, there is no violation of WESCA.

Every LinkedIn user must agree to the LinkedIn User Agreement, Privacy Policy and Cookie Policy which Plaintiff references in the Complaint. (Compl ¶¶ 51-54); Cesaratto Decl., Exs. B-E. These agreements between Plaintiff and LinkedIn expressly apply not only to Plaintiff's activities on LinkedIn's platforms but also to any "**offsite** collection of data" by LinkedIn "such as via our ads…" (emphasis added).[8] LinkedIn's disclosures in both the Privacy Policy and Cookie Policy clearly describe its activities with respect to offsite collection of user data, stating, for example, "[w]e receive information about your visits and interaction with services provided by others when you log-in with LinkedIn or visit others' services that include some of our plugins (such as "Apply with LinkedIn") or our ads, cookies or similar technologies."[9] LinkedIn further enables users to opt-out of LinkedIn's use of data it collects from tracking technologies on third party sites for purposes related to targeting advertisements.[10] LinkedIn gains consent to showing its users ads after visits to a customer's or partner's site or application and advises that "[t]hese technologies help to provide aggregated information to our customers and partners."[11] Nowhere in

---

[8] *See* Cesaratto Decl., Ex. D (LinkedIn, Cookie Policy, https://www.linkedin.com/legal/cookie-policy (last visited June 30, 2025)); *See also* Cesaratto Decl., Ex. B (LinkedIn, User Agreement, https://www.linkedin.com/legal/user-agreement (last visited June 30, 2025) ("This Contract applies to LinkedIn.com, LinkedIn-branded apps, and other LinkedIn-related sites, apps, communications, and other services that state that they are offered under this Contract ("Services"), including the offsite collection of data for those Services, such as via our ads…"))

[9] *See* Cesaratto Decl, Ex. C (LinkedIn, Privacy Policy, https://www.linkedin.com/legal/privacy-policy (last visited June 30, 2025)).

[10] *Id.*

[11] Cesaratto Dec. Ex. D (Linkind(LinkedIn, Cookie Policy, https://www.linkedin.com/legal/cookie-policy (last visited June 30, 2025))

these agreements does LinkedIn limit or otherwise represent that health-related websites or information are excluded from its offsite data collection activities, nor is such information excluded from the scope of the agreements. Plaintiff admits that she agreed to the terms of the User Agreement, Privacy Policy and Cookie Policy by creating a LinkedIn account and through accessing and using LinkedIn's services. (Compl ¶¶51-54).[12]

Plaintiff also consented for ECPA purposes by using the Website (subject to the Thriveworks Website Privacy Policy and Terms of Use) (Frank Decl. Ex. A), including while maintaining a LinkedIn account. (Compl ¶ 13). Indeed, Thriveworks Privacy Policy expressly provides for disclosure to third parties using tracking technologies:

> "Non-Personal Data*: As you interact with our Sites, we may also collect information about your browsing history or certain other information that is not Personally Identifiable Information through your use of and visits to the Sites and our use of a variety of technologies, including, but not limited to, cookies, tags, beacons, Internet Protocol (IP) address, and other tools. Cookies may be placed by us or third party advertisers*. "Tags" and web beacons refer to code scripts that are primarily used to track visitors' activities on our Sites by web analytics software. The types of non-personal data collected on our Sites through the use of these, and other tools as Thriveworks may add from time to time, may include: the search terms you used, new or returning user, browser information, computer type, operating system, internet service providers, website usage, referring/exit pages, platform type, date/time stamp, number of clicks, ads viewed, etc. Additionally, cookies, tags and other tools placed by third parties may collect other information about you and your visits to Sites and elsewhere on the Internet including, but not limited to, your industry, company size, job function, seniority level, etc. . . . *We may share the Non-Personal Data we collect with third parties or permit third parties to place tools like cookies, tags and web beacons, to collect additional Non-Personal Data when you browse our Sites. We or other third party companies may then use the Non-Personal Data to provide advertisements and targeted advertisements to you (ads based on the Non-Personal Data).*" (Emphasis added).

By virtue of both her LinkedIn and Thrieveworks consents under these clear disclosures, Plaintiff consented to the collection, disclosure and use of her data defeating her wiretapping

[12] *See* Cesaratto Decl., Ex. 1 (LinkedIn, User Agreement, https://www.linkedin.com/legal/user-agreement (last visited June 30, 2025))

claims. *See, e.g., Silver v. Stripe Inc.*, No.4:20-cv-08196-YGR, 2021 WL 3191752, at *4 (N.D. Cal. July 28, 2021) (holding that the terms of service and privacy policy constituted consent to third party collection of consumer data given sufficient notice of the conduct); *Smith v. Facebook, Inc.*, 262 F.Supp.3d 943, 956 (N.D. Ca. 2017), *aff'd* 745 F.App'x 8 (9th Cir. 2018) (social media users' consent when they signed up for their social media accounts bars their statutory claims under the ECPA). The consent exceptions under the ECPA and WESCA state law thereby apply, and Plaintiff's claims are deficient as a matter of law.

### G. Plaintiff Fails to Plausible Allege That "Contents" of Communications Concerning Her Particular Health Condition Were Intercepted or Disclosed

As discussed above, Plaintiff must demonstrate that Defendants intercepted or disclosed the "contents" of a communication in order to state a claim under ECPA and WESCA. 18 U.S.C. § 2511(3)(a) (defining "Contents" as "any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8)). Courts interpreting the meaning of content under ECPA have distinguished between "record information" ("a record or other information pertaining to a ... customer") and "contents" ("the intended message conveyed by the communication"), finding that record information is not within the meaning of content under the statute. *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106-1107 (9th Cir. 2014) ("'contents' ... does not include record information regarding the characteristics of the message that is generated in the course of the communication"); *see also In re Nickelodeon Consumer Priv. Litig.*, Nos. 12-07829, 13-03755, 13-03729, 13-03757, 13-03731, 13-03756, 2014 WL 3012873, at *15 (D.N.J. July 2, 2014) (holding the "addressing information" including IP addresses "are simply not 'contents' of a communication"); 18 Pa. Cons. Stat. § 5703.

Here, Plaintiff alleges that user IP addresses, device information and information regarding user activity on the Website was collected and disclosed. *See* Compl. ¶¶58, 85. None of this

information constitutes "contents" under the ECPA. *See In re Nickelodeon,* 2014 WL 3012873, at *15 (finding addressing information, including "IP addresses ... are simply not 'contents' of a communication"); *see also e.g., Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) (finding under the California Invasion of Privacy Act, applying the same definition of content under ECPA, that "keystrokes, mouse clicks, pages viewed, and shipping and billing information ... [and] the date and time of the visit, the duration of the visit, Plaintiff's IP address, her location at the time of the visit, her browser type, and the operating system on her device" did not constitute content).

As noted above, moreover, Plaintiff does not plausibly allege that the contents of any communications particular to her health condition were intercepted or disclosed. (*See* Compl. ¶¶10-12). Plaintiff does not plausibly allege that any information concerning her particular medical conditions were disclosed, or that she received targeted advertisements concerning her particular medical conditions based on her interactions on Defendants' Website. Thus, Plaintiff has failed to plausibly allege that the contents of intercepted communications related to her medical conditions were intercepted or disclosed in violation of the wiretapping laws.

### H. Plaintiff's Claims are Wholly or Partially Time Barred

Plaintiff's claims are time barred because Plaintiff does not plausibly allege any violations occurring within the last two years after she last accessed the Website in May 2023. *See* Compl. ¶10 (alleging that Plaintiff was a patient since 2023 and last accessed the Website on May 22, 2023). Although Plaintiff alleges that she last accessed the Website within the two-year limitations period, there is no allegation that any unlawful interception or disclosure of an unlawfully

intercepted communication occurred on that date or any other date within the limitations period.[13] There is no sufficiently alleged basis to plausibly toll the statute of limitations.

The statute of limitations for civil actions under the federal wiretap act and WESCA is two years from the date the claimant first has a reasonable opportunity to discover the violation. 18 U.S.C.A. § 2520; 42 Pa. Con. Stat. § 5524(7). According to the Supreme Court, under the discovery rule, a cause of action accrues (1) when the plaintiff did in fact discover, or (2) when a reasonably diligent plaintiff would have discovered, the facts constituting the violation—whichever comes first. *Merck & Co. Inc. v. Reynolds*, 559 U.S. 633, 637 (2010). Federal courts have long recognized that the claimant is not required to "have actual knowledge of the violation" to begin running the statute of limitations, but only "that the claimant have had a reasonable opportunity to discover [such violation]'". *DirecTV, Inc. v. Wright*, 350 F.Supp.2d 1048, 1056 (N.D. Ga. 2004) (quoting *Davis v. Zirkelbach*, 149 F.3d 614, 618 (7th Cir. 1998)).

The Fourth Circuit has likened this concept to "inquiry notice," which is defined as that which would require "a person to investigate when the information available would [] prompt a reasonable person to do so". *Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 558 (4th Cir. 2019) (citation omitted). In practice, this means that if a plaintiff has enough information that would lead a reasonable person to inquire further, they are considered to be on inquiry notice. *Id*. More specifically, when a plaintiff believes they might have been harmed and knows who is responsible for that harm they would be on inquiry notice to act for the purpose of tolling the limitations period due to fraudulent concealment. *SD3 II LLC v. Black & Decker (U.S.) Inc.*, 888 F.3d 98, 113 (4th Cir. 2018).

---

[13] The limitations period ran on April 25, 2023, two years prior to the April 25, 2025 filing.

The equitable doctrine of fraudulent concealment applies in situations where the defendant has wrongfully deceived or misled the plaintiff in order to conceal the existence of a cause of action and prevents a defendant from concealing a fraud, or committing a fraud in a manner that it concealed itself until the defendant could plead the statute of limitations to protect it. *Edmonson*, 922 F.3d at 549; *Weinberger v. Retail Credit Co.*, 498 F.2d 552, 555 (4th Cir.1974) (requiring evidence of affirmative acts of concealment). "A plaintiff satisfies its burden to allege an affirmative act of concealment if, for example, it alleges that a defendant employed 'some trick or contrivance intended to exclude suspicion and prevent inquiry.'" *Edmonson*, 922 F.3d at 553 (citing *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 446–47 (6th Cir. 2012)). Moreover, to plead fraud with particularity under Fed. R. Civ. P. 9(b), the "circumstances" a plaintiff should plead "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (citation omitted).

Here, the statute of limitations should not be tolled because plaintiff was on inquiry notice from when she first accessed the Website, such that she had enough information that would lead a reasonable person to inquire further into the alleged violations by Defendants. For instance, the Complaint demonstrates her awareness that her access and use of the Website was subject to Defendants' policies. (Compl. fn1, fn3, ¶43, Figure 2). Additionally, as noted above, the Privacy Policy & Terms of Use posted to the Website clearly states that third party tracking technologies were used on the Website, including by third party advertisers, to collect and disclose browsing history concerning use and visits to the Website.[14] Plaintiff was on notice of the use and disclosure of her browsing activity. Therefore, Plaintiff's allegation that the earliest she, acting with due

[14] See Cesaratto Decl., Ex. 2.

diligence, could have reasonably discovered Defendants' conduct would have been shortly before the filing of the Complaint is belied by other inconsistent allegations in the Complaint to which she is bound. Given that she first became a patient in 2023, the earliest she would have had access to the Website and its Privacy Policy & Terms of Use therein would have to have been in 2023, which is clearly more than two years since the arbitrary date she claims as "shortly before the filing of the Plaintiff's complaint in this matter." (Compl. ¶74).

Moreover, it is likely that Plaintiff actually had inquiry notice from as early as July 2022, which is the date of the joint press release issued by the FTC and HHS she cites in her Complaint. Specifically, she indicates that "[t]he Federal Trade Commission and the U.S. Department of Health and Human Services' Office for Civil Rights (OCR) are cautioning hospitals and telehealth providers [regulated entities] about the privacy and security risks related to the use of online tracking technologies integrated into their websites or mobile apps that may be impermissibly disclosing consumers' sensitive personal health data to third parties." (Compl. ¶33). Federal courts deciding ECPA claims have declined to toll the statute of limitations when the alleged violation was the use of unrestricted JavaScripts in the computer code on a website payment page, because the plaintiff cited articles addressing the security risks known to be associated with unrestricted JavaScripts more than two years after filing the complaint. *Jurgens v. Build.com, Inc.*, No. 4:17-CV-00783-AGF, 2017 WL 5277679, at *6 (E.D. Mo. Nov. 13, 2017). Additionally, despite the Plaintiff here claiming that the tracking technologies were and are "entirely invisible" to a website visitor, there is nothing in the complaint that suggests she, or anyone else, "was prevented from discovering them sooner." *Id.* at *6-7 (Compl. ¶68).

Finally, Plaintiff has not satisfied her burden of plausibly alleging affirmative evidence of concealment by Defendants. While Plaintiff claims that Defendants knowingly and actively

concealed its incorporation of the Tracking Technologies into its Website, Plaintiff offers nothing more than this conclusory allegation. Indeed, Defendants' Privacy Policy & Terms of Use notified Plaintiff expressly that there may be certain third party tracking technologies in place on the Website. Accordingly, Plaintiff's claims are time barred.

## CONCLUSION

For the foregoing reasons, Defendants respectfully requests that the Court grant their motion under Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6) and dismiss the Complaint in its entirety with prejudice.

Dated: July 10, 2025

Respectfully submitted,

*/s/ Edward John Steren*

Edward John Steren
Virginia Bar Number: 88705
Brian G. Cesaratto (pro hac vice)
Laura DePino (pro hac vice)

EPSTEIN BECKER & GREEN, P.C.
1227 25th Street, N.W., Suite 700
Washington, D.C. 20037
Tel: (202) 861-1825
Fax: (202) 861-3070
ESteren@ebglaw.com
Bcesaratto@ebglaw.com
LDePonio@ebglaw.com

Attorney for Defendants Thriveworks Administrative Services, LLC and Thriveworks, Inc.