**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION**

LILA WAKELY, individually and on behalf of all others similarly situated,

Plaintiff,

v.

THRIVEWORKS ADMINISTRATIVE SERVICES, LLC and THRIVEWORKS, INC.,

Defendants.

Case No. 6:25-cv-00032-NKM

Hon. Norman K. Moon

**PLANTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS COMPLAINT**

# TABLE OF CONTENTS

PAGE

INTRODUCTION ........................................................ 1

STANDARD OF REVIEW ........................................................ 3

ARGUMENT ........................................................ 4

I. PLAINTIFF HAS STANDING TO BRING HER CLAIM UNDER THE ECPA ........................................................ 4

A. Plaintiff Has Established Injury-in-Fact ........................................................ 4

B. Defendants' Proffered Authority is Inapposite ........................................................ 9

II. THIS COURT HAS SUBJECT MATTER JURISDICTION OVER PLAINTIFF'S WESCA CLAIMS ........................................................ 10

III. PLAINTIFF SUFFICIENTLY ALLEGES HER CLAIM UNDER THE ECPA ........................................................ 12

A. Defendants Intercepted Plaintiff's Communications for a Criminal or Tortious Purpose ........................................................ 12

B. Defendants Disclosed Individually Identifiable Health Information ("IIHI") To LinkedIn and Google ........................................................ 16

IV. PLAINTIFF DID NOT CONSENT TO THE DISCLOSURE OF HER PHI ........................................................ 21

A. Plaintiff Did Not Consent to the Disclosure of Her Protected Health Information When She Created Her LinkedIn Account ........................................................ 22

B. Defendants' Privacy Policy Does Not Explicitly Notify Patients That Defendants Disclose PHI To Third Parties ........................................................ 24

C. Plaintiff Plausibly Alleges The "Contents" Of Her Communications Were Intercepted Or Disclosed ........................................................ 25

D. Plaintiff's Claims Are Timely ........................................................ 28

CONCLUSION ........................................................ 32

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*A.D. v. Aspen Dental Mgmt., Inc.*,
2024 WL 4119153 (N.D. Ill. Sept. 9, 2024) ....................14, 28

*A.S. v. SelectQuote Ins. Servs.*,
2024 WL 3881850 (S.D. Cal. Aug. 19, 2024) ....................7

*ACA Fin. Guar. Corp. v. City of Buena Vista*,
917 F.3d 206 (4th Cir. 2019)....................3, 4

*Am. Hosp. Assn., v. Xavier Becerra*,
738 F. Supp. 3d 780 (N.D. Tex. 2024)....................18

*Andrews v. Prisma Health*,
2024 WL 3861384 (D.S.C. Aug. 16, 2024) ....................9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................4

*B.K. v. Desert Care Network*,
2024 WL 1343305 (C.D. Cal. Feb. 1, 2024)....................14

*Balanzar v. Fidelity Brokerage Services, LLC*,
654 F.Supp.3d 1075 (S.D. Cal. Feb. 3, 2023)....................30

*Bassaw v. United Indus. Corp.*,
482 F. Supp. 3d 80 (S.D.N.Y. 2020)....................30

*Beck v. McDonald*,
848 F.3d 262 (4th Cir. 2017)....................9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................4

*Byars v. Goodyear Tire & Rubber Co.*,
654 F.Supp.3d 1020 (C.D. Cal. 2023)....................26

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) ....................24

*Calhoun v. Google, LLC*,
113 F.4th 1141 (9th Cir. 2024)....23

*Carrier Corp. v. Outokumpu Oyj*,
673 F.3d 430 (6th Cir. 2012)....29

*Checchia v. SoLo Funds, Inc.*,
2024 WL 3717491 (3d Cir. 2024)....24

*Clemens v. ExecuPharm Inc.*,
48 F.4th 146 (3d Cir. 2022)....5

*Colorado River Water Conservation Dist. v. U.S.*,
424 U.S. 800 (1976)....12

*Cooper v. Mount Sinai Health Sys., Inc.*,
742 F. Supp. 3d 369 (S.D.N.Y. 2024)....15, 16

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023)....20

*Cousin v. Sharp Healthcare*,
702 F. Supp. 3d 967 (S.D. Cal. Nov. 17, 2023)....20, 21

*CS Wang & Assoc. v. Wells Fargo Bank, N.A.*,
305 F. Supp. 3d 864 (N.D. Ill. 2018)....7

*Curtis v. Propel Property Tax Funding, LLC*,
915 F.3d 234 (4th Cir. 2019)....8

*Doe I v. Google LLC*,
2025 WL 1616720 (N.D. Cal. June 6, 2025)....19

*Doe v. Bayhealth Med. Ctr.*,
2025 WL 1010403 (D. Del. Apr. 4, 2025)....18

*Doe v. Call-on-Doc, Inc.*,
2025 WL 1677632 (S.D. Cal. June 13, 2025)....7

*Doe v. Fullstory, Inc.*,
712 F. Supp. 3d 1244 (N.D. Cal. Jan. 17, 2024)....31

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023)....28

*Doe v. Tenet Healthcare Corp.*,
2025 WL 1635956 (E.D. Cal. June 9, 2025) .......... 6, 17, 30

*Edmonson v. Eagle Nat'l Bank*,
922 F.3d 535 (4th Cir. 2019) .......... 29, 30

*Fan v. NBA Properties Inc.*,
2024 WL 1297643 (N.D. Cal. Mar. 26, 2024) .......... 22

*Feldman v. Star Tribune Media Company LLC*,
2023 WL 2388381 (D. Minn. Mar. 7, 2023) .......... 8

*Frasco v. Flo Health, Inc.*,
2025 WL 1433825 (N.D. Cal. May 19, 2025) .......... 7

*Friends of the Earth, Inc. v. Laidlaw Envtl. Srvcs. (TOC), Inc.*,
528 U.S. 167 (2000) .......... 4

*Gaige v. Exer Holding Company, LLC*,
2025 WL 559719 (C.D. Cal. Mar. 2, 2025) .......... 2, 10, 16, 18

*Garcia v. Build.com, Inc.*,
2023 WL 4535531 (S.D. Cal. July 13, 2023) .......... 8

*Garey v. James S. Farrin, P.C.*,
35 F.4th 917 (4th Cir. 2022) .......... 5, 7

*Gay v. Garnet Health*,
2024 WL 4203263 (S.D.N.Y. Sept. 16, 2024) .......... 14, 16

*Goodman v. Praxair, Inc.*,
494 F.3d 458 (4th Cir. 2007) .......... 28

*Gray v. Luxottica of Am., Inc.*,
2024 WL 5689566 (C.D. Cal. Dec. 16, 2024) .......... 7

*Hartley v. Univ. of Chi. Med. Ctr.*,
2024 WL 1886909 (N.D. Ill. Apr. 30, 2024) .......... 14

*Heerde v. Learfield Communications, LLC*,
741 F. Supp. 3d 849 (C.D. Cal. July 19, 2024) .......... 25

*Helgund v. Atkin Cnty.*,
871 F.3d 572 (8th Cir. 2017) .......... 8

*Howard v. Lab'y Corp. of Am.*,
2024 WL 4250677 (M.D.N.C. Aug. 8, 2024) ........ Passim

*Hutton v. Nat'l Bd. Of Examiners in Optometry, Inc.*,
892 F.3d 613 (4th Cir. 2018) ........ 9

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) ........ 26

*In re Facebook Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ........ 5, 6, 26, 27

*In re Facebook, Inc., Consumer Privacy User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ........ 22

*In re Google Assistant Privacy Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ........ 22

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015) ........ 28

*In re Google Inc.*,
2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ........ 23, 24

*In re Google, Inc. Cookie Placement Consumer Privacy Litig.*,
934 F.3d 316 (3d Cir. 2019) ........ 8

*In re Grp. Health Plan Litig.*,
709 F. Supp. 3d 707 (D. Minn. 2023) ........ 14, 16, 28

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. Dec. 22, 2022) ........ Passim

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. Mar. 25, 2024) ........ 10

*In re Nickelodeon Consumer Privacy Litig.*,
2014 WL 3012873 (D.N.J. July 2, 2014) ........ 27

*India Price v. Carnival Corp.*,
712 F.Supp.3d 1347 (S.D. Cal. Jan. 19, 2024) ........ 27

*J.C. v. Cath. Health Sys. Inc.*,
2024 WL 5136236 (W.D.N.Y. Aug. 29, 2024) ........ 19

*Jurgens v. Build.com, Inc.*,
2017 WL 5277679 (E.D. Mo. Nov. 13, 2017) ....................31

*K.L. v. Legacy Health*,
2024 WL 4794657 (D. Or. Nov. 14, 2024) ....................3

*Kane v. Univ. of Rochester*,
2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024) ....................14

*King v. Rubenstein*,
825 F.3d 206 (4th Cir. 2016) ....................3, 4

*Krakauer v. Dish Newtork, LLC*,
925 F.3d 643 (4th Cir. 2019) ....................5

*Kurowski v. Rush Sys. For Health*,
659 F. Supp. 931 (N.D. Ill. 2023) ....................15

*Kurowski v. Rush Sys. For Health*,
2023 WL 8544084 (N.D. Ill. Dec. 11, 2023) ....................14, 15, 20

*Kurowski v. Rush Sys. For Health*,
2024 WL 3455020 (N.D. Ill. July 18, 2024) ....................15, 20

*Lawrence v. Finicity Corp.*,
716 F. Supp. 3d 851 (E.D. Cal. 2024) ....................28

*Lugo v. Inova Health Care Servs.*,
2025 WL 905191 (E.D. Va. Mar. 25, 2025) .................... Passim

*M.R. v. Salem Health Hosps. & Clinics*,
2024 WL 3970796 (D. Or. Aug. 28, 2024) ....................3

*Mekhail v. N. Mem'l Health Care*,
726 F. Supp. 3d 916 (D. Minn. 2024) ....................14

*Murphy v. Thomas Jefferson Univ. Hosps., Inc.*,
2024 WL 4350328 (E.D. Pa. Sept. 30, 2024) ....................14

*Nadendla v. WakeMed*,
24 F.4th 299 (4th Cir. 2022) ....................4

*Nienaber v. Overlake Hosp. Med. Ctr.*,
2025 WL 692097 (W.D. Wash. Mar. 4, 2025) ....................19

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023)....................24

*Perkins v. LinkedIn Corp.*,
53 F. Supp. 3d 1190 (N.D. Cal. 2014)....................23

*Perry v. Cable News Network, Inc.*,
854 F.3d 1336 (11th Cir. 2017)....................8

*Petris v. Sportsman's Warehouse, Inc.*,
736 F. Supp. 3d 260 (W.D. Pa. 2024)....................6, 12

*Philan Ins. Ltd. V. Frank B. Hall & Co., Inc.*,
786 F. Supp. 345 (S.D.N.Y. 1992)....................11

*Poppiti v. United Indus. Corp.*,
2020 WL 1433642 (E.D. Mo. Mar. 24, 2020)....................30

*Quackenbush v. Allstate Ins. Co.*,
517 U.S. 706 (1996)....................11

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024)....................21

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. 2019)....................27

*Richmond, F. & P. R.R. Co. v. Forst*,
4 F.3d 244 (4th Cir. 1993)....................22, 28

*Rodriguez v. FastMed Urgent Care, PC.*,
741 F. Supp. 3d 352 (E.D.N.C. 2024)....................14, 15, 16

*Salazar v. Nat'l Basketball Ass'n*,
118 F.4th 533 (2d Cir. 2024)....................8

*Shah v. Capital One Finan. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. Mar. 3, 2025)....................22

*Silver v. Stripe Inc.*,
2021 WL 3191752 (N.D. Cal. July 28, 2021)....................25

*Simmons v. United Mortg. & Loan Inv., LLC*,
634 F.3d 754 (4th Cir. 2011)....................4

*Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*,
549 U.S. 422 (2007) ....................................................................................................3

*Smith v. Facebook, Inc.*
745 F. App'x 8 (9th Cir. 2018) ....................................................................................25

*Smith v. Loyola Univ. Med. Ctr.*,
2024 WL 3338941 (N.D. Ill. July 9, 2024)...................................................................14

*Steel Co. v. Citizens for a Better Environment*,
523 U.S. 83 (1998) ........................................................................................................3

*Strong v. LifeStance Health Grp. Inc.*,
2025 WL 317552 (D. Ariz. Jan. 28, 2025)....................................................................21

*Stuart v. Kyocera AVX Components Corp.*,
769 F. Supp. 3d 476 (D. S.C. Mar. 7, 2025) ..................................................................9

*Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.*,
71 F.3d 119 (4th Cir. 1995)...........................................................................................29

*Sweat v. Hous. Methodist Hosp.*,
2024 WL 3070184 (S.D. Tex. June 20, 2024) ...............................................................14

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ........................................................................................................5

*Yockey v. Salesforce, Inc.*,
2023 WL 5519323 (N.D. Cal. Aug. 25, 2023)...............................................................12

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (N.D. Cal. July 15, 2021)............................................................27

**STATUTES**

18 Pa. Cons. Stat. § 5701 ..................................................................................................1

18 U.S.C. §2520 ..............................................................................................................28

18 U.S.C. § 2511(1)...........................................................................................................1

18 U.S.C. § 2511(2)(d) .....................................................................................................12

28 U.S.C. § 1331 .............................................................................................................11

28 U.S.C. § 1332 .............................................................................................................11

28 U.S.C. § 1367 ....................................................................................................................11

28 U.S.C. § 1367(c) ...............................................................................................................11

42 U.S.C. § 1320 ....................................................................................................................23

42 U.S.C. § 1320d(6) .......................................................................................................18, 19

42 Pa. Con. Stat. § 5524(7) ....................................................................................................28

Va. Code § 31.1-127.103(A) ....................................................................................................5

**RULES**

Fed. R. Civ. P. 8 .......................................................................................................................4

Fed. R. Civ. P. 12 .....................................................................................................................3

**REGULATIONS**

45 C.F.R. § 160.103 .................................................................................................................5

45 C.F.R. § 164.502 .................................................................................................................5

45 C.F.R. § 164.514(b)(2)(i) ...................................................................................................23

45 C.F.R. § 165.508(a) ...........................................................................................................23

## INTRODUCTION

Defendants Thriveworks Administrative Services, LLC and Thriveworks, Inc. (together, "Defendants" or "Thriveworks") provide online and in-person therapy and psychiatry to children/teens, adults, couples, and families through their website, www.thriveworks.com (the "Website"). Dkt. 1 ¶ 1 ("Compl."). Thriveworks holds itself out as a trusted partner to those seeking and navigating mental health treatment and invites users to explore "award-winning therapy covered by insurance." *Id.* ¶¶ 1, 7; *see also id.* ¶ 43, Figure 2 (Dkt. 1 at 24-25) ("As a HIPAA-covered entity, Thriveworks keeps your PHI … strictly confidential."). But behind this seemingly compassionate digital front lies a troubling betrayal: while promoting a façade of care and confidentiality, Defendants secretly disclose sensitive and protected health information ("PHI")—including the interactions patients take within their private patient portal and the specific therapy treatments they are seeking (addiction, postpartum depression, sexual abuse, etc.)—to LinkedIn and Google, two of the world's largest social media and advertising companies. And Defendants do so without their patients' knowledge or consent. *Id.* ¶¶ 8-9. Defendants' conduct therefore violates the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511(1), *et seq*. and the Pennsylvania Wiretapping Act ("WESCA"), 18 Pa. Cons. Stat. § 5701, *et seq*.

This is not a disclosure made for medical treatment or care. It is a calculated exploitation of patient data for commercial gain, fueling targeted advertising and enriching Defendants, LinkedIn, and Google in the process, at the expense of Defendants' patients. The intrusion is accomplished via complex computer code embedded on the Website known as tracking pixels. Defendants intentionally embedded LinkedIn and Google's tracking pixels on their own Website, which intercept PHI as their patients engage with the Website to book their therapy and psychiatry appointments. Plaintiff, like countless others, used the Website to seek mental health treatment

while maintaining a LinkedIn and Google account. She had no reason to suspect that doing so would expose her private medical information to unknown third parties.

As a healthcare provider, Defendant is subject to strict duties under federal and state law, including the Health Insurance Portability and Accountability Act ("HIPAA") and Virginia Health Records Privacy Act ("VHRPA"), § 32.1-127.1:03, which define and protect individually identifiable health information ("IIHI"). This includes any data created or received by a healthcare provider that relates to a person's physical or mental health (including patient status) and identifies (or could reasonably be used to identify) that person. *See In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 791 (N.D. Cal. Dec. 22, 2022) ("I agree that the information at issue here appears to show patient status and thus constitutes protected health information under HIPAA."). Importantly, HIPAA protections attach to PHI collected on a provider's website, even before a formal doctor-patient relationship is established. Defendants' conduct flies in the face of these obligations.

Courts across the country routinely recognize that such conduct is unlawful, including earlier this year in the Easten District of Virginia. *See Lugo v. Inova Health Care Servs.*, 2025 WL 905191, at *6 (E.D. Va. Mar. 25, 2025) (holding "Plaintiff has properly alleged that INOVA violated HIPAA by using pixels on its website and Patient Portal" where plaintiff alleged defendant disclosed, via Google's tracking pixel on its website, "(1) status as medical patients; (2) communications with Inova Health through its websites and Patient Portal; and (3) information about their medical appointments" among other data); *see also Howard v. Lab'y Corp. of Am.*, 2024 WL 4250677, at *11 (M.D.N.C. Aug. 8, 2024), *report and recommendation adopted,* 2024 WL 4326898 (M.D.N.C. Sept. 27, 2024) (denying motion to dismiss WESCA claim based on similar wiretapping allegations); *Gaige v. Exer Holding Company, LLC*, 2025 WL 559719, at *5

(C.D. Cal. Mar. 2, 2025) (denying motion to dismiss ECPA claims where the plaintiff alleged that the defendant health care provider unlawfully disclosed PHI to Facebook without his knowledge or consent); *K.L. v. Legacy Health*, 2024 WL 4794657, at *6 (D. Or. Nov. 14, 2024) ("The Court agrees with the line of cases finding that violating HIPAA can constitute an independent criminal act for purposes of the carve-out to ECPA's party exception."); *M.R. v. Salem Health Hosps. & Clinics*, 2024 WL 3970796, at *5 (D. Or. Aug. 28, 2024) (same). The same outcome is warranted here.

Unlike Defendants' proffered authority, this case is not about ordinary commercial data collection or the collection of generalized web analytics. It is about a medical provider betraying patient trust by allowing advertising platforms to surreptitiously collect and exploit health-related information disclosed in the course of seeking medical care. For the reasons detailed herein, Defendants' motion should be denied.

## STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure tests a district court's subject matter jurisdiction. When a party attacks the subject matter jurisdiction of the court under Rule 12(b)(1), the court generally must first determine that it has jurisdiction as a threshold matter. *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431–32 (2007) (citing *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1998)).

"A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the claims pled in a complaint." *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 211 (4th Cir. 2019). It does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). "This standard does not require detailed factual allegations." *ACA Fin. Guar. Corp.*, 917 F.3d at 211 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Instead, "[t]o meet the Rule 8 standard and survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Nadendla v. WakeMed*, 24 F.4th 299, 305 (4th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, with all allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor," *King*, 825 F.3d at 212. However, the Court need not "accept the legal conclusions drawn from the facts," or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) (internal quotes omitted).

## ARGUMENT

### I. PLAINTIFF HAS STANDING TO BRING HER CLAIM UNDER THE ECPA

#### A. Plaintiff Has Established Injury-In-Fact

To establish Article III standing, a plaintiff must plead facts that plausibly demonstrate: (1) she has suffered a concrete, particularized, and actual (*i.e.*, not conjectural or hypothetical) injury; (2) the injury is traceable to the challenged action of the defendant; and (3) it is likely (*i.e.*, not merely speculative), that the injury will be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Srvcs. (TOC), Inc.*, 528 U.S. 167, 180-181 (2000). As the Supreme Court has recognized, "disclosure of private information[] and intrusion upon seclusion" are "harms

traditionally recognized as providing a basis for lawsuits in American courts." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021).

The Fourth Circuit is in accord, acknowledging, even before *TransUnion*, that "injuries to personal privacy have long been 'recognized in tort law and redressable through private litigation.'" *Garey v. James S. Farrin, P.C.*, 35 F.4th 917, 922 (4th Cir. 2022) (quoting *Krakauer v. Dish Newtork, LLC*, 925 F.3d 643, 653 (4th Cir. 2019)). Because those privacy harms are "well-ensconced in the fabric of American law," intangible harms bearing a close relationship to them "qualify as concrete." *See Clemens v. ExecuPharm Inc.*, 48 F.4th 146, 155-159 (3d Cir. 2022) (internal quotations omitted); *TransUnion*, 594 U.S. 413 (claims for disclosure of private information and intrusion upon seclusion involve concrete injuries long recognized as providing a basis to sue); *In re Facebook Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) (violations of privacy rights have long been actionable at common law and "encompass[] the individual's control of information concerning his or her person").

Defendants challenge only the first prong of the standing analysis, arguing that Plaintiff's ECPA claim should be dismissed because she "does not allege any actual harm or sufficiently allege a concrete and particularized intangible harm arising from an ECPA violation sufficient to establish injury-in-fact." Dkt. 20 ("MTD") at 9. Defendants are incorrect and, as a result, their argument has been consistently rejected in the invasion of privacy context.

As a preliminary matter, healthcare providers like Defendants are prohibited from disclosing medical information without consent, as Plaintiff alleges here. *See* 45 C.F.R. §§ 160.103, 164.502; Va. Code § 31.1-127.103(A); *see also* Compl. ¶¶ 60-62 (Dkt. 1 at 32-33). Accordingly, patients who have had their protected information disclosed without consent have

suffered a harm akin to intrusion upon seclusion sufficient to confer standing. Indeed, in a near-identical case, another court in this Circuit held:

> In conjunction with the statutory violations of CIPA and WESCA, Plaintiffs have sufficiently alleged that these violations were premised upon and resulted in unconsented-to invasions of their privacy and disclosure of their private information. (Am. Compl. ¶¶ 2-3, 25, 41, 76-77, 83-84, 86-90, 92-96, 98-100.) Taking the facts alleged in the Complaint as true, and drawing all inferences in Plaintiffs' favor, the Court reads the Complaint as alleging that the three named Plaintiffs each conducted searches on the Labcorp website regarding their own sensitive medical issues, and that as a result of Defendants' deliberate choice to install certain code on the Labcorp website, this sensitive medical information was then intercepted and linked with their personal identifying information and transmitted to Meta and Google, where it was linked to their Facebook ID/Google ID and then used or sold for commercial purposes, all without Plaintiffs' knowledge or consent. Given these allegations, and given that Plaintiffs adequately allege violations of these privacy-protecting statutes, they have alleged a sufficiently concrete injury to bring federal suit.

*See Howard*, 2024 WL 4250677, at *6.

Federal courts across the country overwhelmingly hold the same in the wiretapping/eavesdropping context. *See, e.g.*, *Doe v. Tenet Healthcare Corp.*, --- F. Supp. 3d ----, 2025 WL 1635956, at *11 (E.D. Cal. June 9, 2025) ("Each Plaintiff has adequately alleged standing by demonstrating an injury in fact, caused by Defendants' conduct, and redressable by this court. Namely, Plaintiffs … submitted personal information, and Defendants invaded their privacy rights by disclosing their information to third parties without consent through the use of tracking technology embedded on Defendants' Web Properties. At the pleading stage, Plaintiffs allegations are sufficient to establish standing.") (internal citations omitted); *Petris v. Sportsman's Warehouse, Inc.*, 736 F. Supp. 3d 260, 271 (W.D. Pa. 2024) ("The common-law right of privacy and WESCA give Petris the right to control the flow of information concerning his person, which includes his firearm purchase. As alleged, Sportsman's Warehouse surreptitiously disclosed Petris's personal information related to his firearm purchase, which is not information 'open to

public inspection,' to third parties without his consent."); *CS Wang & Assoc. v. Wells Fargo Bank, N.A.*, 305 F. Supp. 3d 864, 880 (N.D. Ill. 2018) ("[T]he court concludes that Plaintiffs have suffered a sufficiently concrete injury by alleging a violation of their right to privacy. Invasion of privacy is actionable at common law, … and the type of injury alleged here arises from the exact same type of violation that CIPA prohibits: recording telephone communications without consent."); *Gray v. Luxottica of Am., Inc.*, 2024 WL 5689566, at *4 (C.D. Cal. Dec. 16, 2024) ("Plaintiff has plausibly stated an injury-in-fact to satisfy Article III standing. Plaintiff alleges that Defendant aided Facebook in 'intercepting' his 'sensitive and confidential' information shared with the LensCrafters website to schedule eye exams and obtain new eyewear prescriptions, and that these acts breached his right to privacy.").[1]

Here, Plaintiff's injury is not a bare statutory violation. Instead, Plaintiff alleges that she "has made multiple appointments" through the Website "while logged into her patient portal." Compl. ¶ 10. "Unbeknownst to Plaintiff, Defendants disclosed her PHI—including the specific reasons for which she was seeking therapy and information related to her health insurance provider—to LinkedIn and Google for targeted advertising purposes." *Id.* ¶ 11. Defendants' conduct—disclosing information that is both personally identifiable and protected by state and federal law—is an injury sufficient to confer Article III standing. *See Garey*, 35 F.4th at 922 (finding a "legally cognizable privacy injury" where plaintiffs alleged "having his or her privacy

[1] *See also Doe v. Call-on-Doc, Inc.*, 2025 WL 1677632, at *4 (S.D. Cal. June 13, 2025) ("Plaintiff claims her right to privacy was violated when her PII and PHI were intercepted by third parties on Defendant's website, an injury that is concrete and particularized."); *A.S. v. SelectQuote Ins. Servs.*, 2024 WL 3881850, at *8 (S.D. Cal. Aug. 19, 2024) ("Because each named plaintiff has alleged the interception of personal or sensitive information, including his or her name, date of birth, gender, email address, and health information ... the class plaintiffs have alleged facts sufficient to establish standing at this stage."); *Frasco v. Flo Health, Inc.*, 2025 WL 1433825, at *12 (N.D. Cal. May 19, 2025) ("Put in terms of standing, the loss of control over one's personal information is the 'concrete' harm, whether from stealing access to a personal diary in 1916 or obtaining user information in a healthcare app in 2016. In each case, a person has lost control over her private information because of another's intentional actions.").

invaded by Defendants' knowingly obtaining his or her name and address from a motor vehicle record for an impermissible purpose in violation of law"); *Curtis v. Propel Property Tax Funding, LLC*, 915 F.3d 234, 241 (4th Cir. 2019) (a statutory violation constitutes a concrete injury if it causes harm to the plaintiff that is "the type of harm Congress sought to prevent when it enacted the statute."); *Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533, 541-542 (2d Cir. 2024) ("One intangible harm that readily qualifies as concrete is the public disclosure of private facts. … Salazar's core allegation is that his personally identifiable information was exposed to an unauthorized third party. And Salazar doesn't just allege that his data was exposed to a third party; rather, he asserts that it was *disclosed* as a result of an arrangement between the NBA and Meta pursuant to which the NBA deliberately uses the Facebook Pixel. This alleged harm is closely related to the public disclosure of private facts analog.") (cleaned up, emphasis in original); *In re Google, Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316, 325 (3d Cir. 2019) ("a concrete injury for Art. III standing purposes occurs when Google, or any other third party, tracks a person's Internet browser activity without authorization); *Helgund v. Atkin Cnty.*, 871 F.3d 572, 577 (8th Cir. 2017) ("An individual's control of information concerning her person—the privacy interest [plaintiffs] claim here—was a cognizable interest at common law"); *Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1341 (11th Cir. 2017) (ample precedent recognizes that an individual has an interest in preventing disclosure of their personal information).[2]

---

[2] *See also Garcia v. Build.com, Inc.*, 2023 WL 4535531, at *3 (S.D. Cal. July 13, 2023) ("Plaintiff alleges that Defendant secretly intercepted and recorded Plaintiff's chat messages without informing her and without her consent. … This is a sufficiently concrete and particularized injury."); *Feldman v. Star Tribune Media Company LLC*, 2023 WL 2388381, at *5 (D. Minn. Mar. 7, 2023) (noting the "evidently close relationship between Feldman's VPPA claim in this case and the intrusion-upon-seclusion tort as it has been traditionally understood").

### B. Defendants' Proffered Authority is Inapposite

The authority relied upon by Defendants misses the mark because those cases primarily concern data breaches rather than the intentional disclosure of protected health information by a healthcare provider. *See*, *e.g.*, *Stuart v. Kyocera AVX Components Corp.*, 769 F. Supp. 3d 476, 480 (D. S.C. Mar. 7, 2025) (employee information accessed by unauthorized third party in data breach); *Beck v. McDonald*, 848 F.3d 262, 267 (4th Cir. 2017) (laptop containing unencrypted patient information misplaced or stolen); *Hutton v. Nat'l Bd. Of Examiners in Optometry, Inc.*, 892 F.3d 613, 618 (4th Cir. 2018) (personal information accessed by unauthorized third party in data breach). Whereas in the data breach context, plaintiffs are often unable to allege "any actual misuse of their PII, such as a sale of their PII to third parties," *Stuart*, 769 F. Supp. 3d at 485, Plaintiff here alleges in detail how her PII was intercepted and misused by third parties for Defendants' and the third parties' financial benefit. *See* Compl. ¶¶ 42-63 (Dkt. 1 at 24-33). That is a concrete injury. *See Howard*, 2024 WL 4250677, at *6 ("In conjunction with the statutory violations of CIPA and WESCA, Plaintiffs have sufficiently alleged that these violations were premised upon and resulted in unconsented-to invasions of their privacy and disclosure of their private information.").

Defendants' reliance on *Andrews v. Prisma Health*, 2024 WL 3861384 (D.S.C. Aug. 16, 2024) is similarly misplaced. As Defendants acknowledge in their motion, *Andrews* relied on the fact that the complaint lacked any allegation that the plaintiff received targeted advertisements after using the website. *See* MTD at 12; *Andrews*, 2024 WL 3861384, at *7. Conversely, here, Plaintiff alleges that "[a]fter booking an appointment on the Thriveworks Website, Plaintiff began receiving targeted advertisements for similar products and services." Compl. ¶ 12. Thus, Plaintiff has suffered a concrete injury from the unauthorized disclosure of her PHI to unknown third parties

in violation of HIPAA, and also due to the "harassing" "targeted advertising" that she received due to Defendants disclosures.[3] Compl. ¶ 12, *id.* ¶ 63 (Dkt. 1 at 33), *id.* ¶ 101 (Dkt 1 at 39).

After conceding that Plaintiff *does* allege receiving targeted advertising, Defendants move the goalposts, claiming that Plaintiff should have alleged the specific types of targeted advertising she received. MTD at 12 (citing *Gaige v. Exer Holding Co., LLC*, 2025 WL 559719 (C.D. Cal. Mar. 2, 2025). But like the plaintiff did in *Gaige*, Plaintiff *does* allege "[a]fter booking an appointment on the Thriveworks Website, Plaintiff began receiving targeted advertisements for similar products and services." Compl. ¶ 12. Nothing more is required because "general factual allegations of injury" are sufficient. *Gaige*, 2025 WL 559719, at *2.

In sum, Plaintiff has standing to bring her ECPA claim. Defendants' argument that Plaintiff fails to allege a concrete injury is belied by Plaintiff's allegations and the weight of relevant authority.

## II. THIS COURT HAS SUBJECT MATTER JURISDICTION OVER PLAINTIFF'S WESCA CLAIMS

Next, Defendants argue that, should the Court find Plaintiff lacks Article III standing to bring her ECPA claim, the Court should then decline to exercise supplemental jurisdiction over Plaintiff's WESCA claim. MTD at 13. However, even if the Court held that Plaintiff lacks Article III standing for her ECPA claim (it should not), the Court still has diversity jurisdiction over

[3] Defendants also argue that Plaintiff could not be harmed by targeted advertising resulting from the LinkedIn Insight Tag because she consented to receive targeted advertising. MTD at 12. That is contradicted by Plaintiff's allegations. When Plaintiff created her LinkedIn account, LinkedIn expressly represented that "[LinkedIn] will only collect and process personal data about you where we have lawful bases." Compl. ¶ 54 (Dkt. 1 at 17). Defendants' argument fails because "[u]sers never choose to provide sensitive information to LinkedIn," and, as established by HIPAA and the VHRPA, LinkedIn would only have a "lawful basis" for processing and utilizing Plaintiff's PHI and PII if she gave express written consent to do so, which she did not. *See* Compl. ¶ 22, *id.* ¶¶ 54-55 (Dkt. 1 at 17-18), *id.* ¶ 110 (Dkt. 1 at 41); *see also In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1003 (N.D. Cal. Mar. 25, 2024) ("Indeed, Meta does not contend that its Terms of Service specifically disclosed that it would receive sensitive financial data. To the contrary, Meta asserts that it publicly stated that such information would *not* be collected.").

Plaintiff's WESCA claim. Defendants' principal places of business are located at "1000 Jefferson St., Ste. 2C, Lynchburg, Virginia," and Plaintiff is "a resident of Newtown Square, Pennsylvania." Compl. ¶¶ 10, 14-15. Further, "this action is a putative class action, and Plaintiff alleges that at least 100 people comprise the proposed class, that the combined claims of the proposed class members exceed $5,000,000 exclusive of interest and costs, and that at least one member of the proposed class is a citizen of a state different from at least one defendant." *Id.* ¶ 17. The Complaint sets forth an adequate basis for diversity jurisdiction because Plaintiff and Defendants are residents of different states (complete diversity) and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332.

Defendants do not challenge these bases and instead argue that the Court should exercise its discretion and decline to retain jurisdiction. MTD at 14. However, that discretion only exists when the Court dismisses all claims over which it has *original* jurisdiction. 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed *all* claims over which it has *original* jurisdiction.") (emphasis added). Because this Court also possesses original jurisdiction over Plaintiff's WESCA claim under 28 U.S.C. § 1332, the Court need not exercise supplemental jurisdiction under 28 U.S.C. § 1367. *See Philan Ins. Ltd. V. Frank B. Hall & Co., Inc.*, 786 F. Supp. 345, 348 (S.D.N.Y. 1992) ("Although Plaintiffs specifically pled jurisdiction based only on 28 U.S.C. § 1331, this Court may take notice of the existence of diversity jurisdiction as based on the allegations in the complaint."). The Court indeed has discretion in determining whether to exercise supplemental jurisdiction over a state law claim, but that discretion does not extend to the Court's original jurisdiction. *See, e.g.*, *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996) ("We have often acknowledged that federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by

Congress."); *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 821 (1976) ("federal courts have a virtually unflagging obligation . . . to exercise the jurisdiction given them") (internal citation omitted). Tellingly, Defendants fail to cite any authority supporting their argument that the Court should decline to retain jurisdiction here.

Moreover, as with her ECPA claim, Plaintiff does not allege an injury from a bare statutory violation, but rather, an injury resulting from the disclosure of her HIPAA-protected PHI related to therapy appointments. This violation of privacy confers standing. *Petris*, 736 F. Supp. 3d at 270 ("Like the common law, WESCA protects the privacy rights of individuals."); *Howard*, 2024 WL 4250677, at *6 ("Violations of WESCA also generally provide a basis for standing because they necessarily involve violations of a privacy interest."); *Yockey v. Salesforce, Inc.*, 2023 WL 5519323, at *3 (N.D. Cal. Aug. 25, 2023) ("Statutes such as CIPA and WESCA thus codify a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer standing.").

## III. PLAINTIFF SUFFICIENTLY ALLEGES HER CLAIM UNDER THE ECPA

### A. Defendants Intercepted Plaintiff's Communications For A Criminal Or Tortious Purpose

Defendants argue they cannot be liable under the ECPA because they were parties to the communications. MTD at 15. As conceded by Defendants, however, the party exception does not apply if the "communication is intercepted for the purpose of committing any tortious or criminal act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d). In other words, if Defendants intercepted Plaintiff's communications "for the purpose of committing any tortious or criminal act," they may be liable under the ECPA.

*Lugo v. Inova Health Care Servs.*, 2025 WL 905191 (E.D. Va. Mar. 25, 2025) is instructive. There, the plaintiffs alleged that the defendant healthcare provider "used pixels on its website and Patient Portal without users' consent," including tracking technology from Google. *Id.* at *2. "These pixels collect identifiable information such as IP addresses, User IDs, and Client IDs," as well as "private information including: (1) individual's status as a medical patient; (2) individuals' communications with [defendant] through its website and patient portal; and (3) details regarding individuals' medical appointments[.]" *Id.* at *1. Based on these allegations, the court found that "Plaintiff has properly alleged violations of HIPAA and the VHRPA which can serve as a criminal or tortious act sufficient to invoke the crime-tort exception to the ECPA." *Id.* at *7.

Plaintiff similarly alleges that Defendants' "chose to embed the LinkedIn Insight Tag and Google Analytics…on the Website, whereby they disclosed the confidential PHI of their patients with LinkedIn and Google for targeted advertising purposes." Compl. ¶ 16. These disclosures include information related to Plaintiff, who "has made multiple appointments through [Defendants'] Website for mental health services." *Id.* ¶ 10. "Unbeknownst to Plaintiff, Defendants disclosed her PHI—including the specific reasons for which she was seeking therapy and information related to her health insurance provider—to LinkedIn and Google for targeted advertising purposes." *Id.* ¶ 11. Such information is identifiable because Defendants also disclose information about its patients' IP addresses, specific devices, and user IDs to LinkedIn and Google, such that both parties are readily able to uncover each patient's identity, including Plaintiff. *Id.* ¶ 48 (Dkt. 1 at 26), *id.* ¶ 55 (Dkt. 1 at 31-32).

Defendants' conduct falls squarely within the crime-tort exception because they intended to violate various tort and criminal laws through the interception of Plaintiff's communications,

including HIPAA's criminal prohibitions against disclosing "individual identifiable health information" without authorization. Numerous federal courts, including within this Circuit, have found substantially similar allegations sufficient to trigger the crime-tort exception. *See Lugo*, 2025 WL 905191, at *8 ("Courts around the country have permitted the invocation of the ECPA's crime-tort exception when [as here] plaintiffs allege violations of HIPAA and other state health privacy laws."); *Kurowski v. Rush Sys. For Health*, 2023 WL 8544084, at *2-3 (N.D. Ill. Dec. 11, 2023) (*Kurowski III*) (finding allegations of a HIPAA violation sufficient to invoke the crime-tort exception); *Kane v. Univ. of Rochester*, 2024 WL 1178340, at *7-8 (W.D.N.Y. Mar. 19, 2024) (same); *Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916, 927-928 (D. Minn. 2024) (same); *Hartley v. Univ. of Chi. Med. Ctr.*, 2024 WL 1886909, at *2-3 (N.D. Ill. Apr. 30, 2024) (same); *Smith v. Loyola Univ. Med. Ctr.*, 2024 WL 3338941, at *7 (N.D. Ill. July 9, 2024) (same); *Sweat v. Hous. Methodist Hosp.*, 2024 WL 3070184, at *4 (S.D. Tex. June 20, 2024) (same); *Gay v. Garnet Health*, 2024 WL 4203263, at *3-4 (S.D.N.Y. Sept. 16, 2024) (same); *Murphy v. Thomas Jefferson Univ. Hosps., Inc.*, 2024 WL 4350328, at *4-5 (E.D. Pa. Sept. 30, 2024) (same); *A.D. v. Aspen Dental Mgmt., Inc.*, 2024 WL 4119153, at *3 (N.D. Ill. Sept. 9, 2024) (same); *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707, 719-20 (D. Minn. 2023) (same); *B.K. v. Desert Care Network*, 2024 WL 1343305, at *6 (C.D. Cal. Feb. 1, 2024) (finding plaintiffs' allegations of violations of state health privacy laws and other state and federal laws sufficient to invoke the crime-tort exception).

Defendants largely rely on *Rodriguez v. FastMed Urgent Care, PC.*, 741 F. Supp. 3d 352 (E.D.N.C. 2024) in arguing that the crime-tort exception does not apply. However, in declining to follow *Rogriguez*, the court in *Lugo* noted that the *Rogriguez* court's analysis was flawed insofar as *Rodriguez* "cited to three cases that involve the ECPA, but do not involve the use of pixels to

gather and disclose private health care information." *Lugo*, 2025 WL 905191, at *7. And the fourth case that *Rodriguez* relied on was *Kurowski v. Rush Sys. For Health*, 659 F. Supp. 931 (N.D. Ill. 2023) (*Kurowski I*), but as the court in *Lugo* recognized, *Rodriguez* relied on the outdated analysis in *Kurowski I*. *Id.* at *8. In *Kurowski III*, the court held that the plaintiff's amended complaint was "sufficient to invoke the HIPAA exception-to the party-exception[.]" *See Kurowski III*, 2023 WL 8544084, at *3; *see also Kurowski v. Rush Sys. For Health*, 2024 WL 3455020, at *6 (N.D. Ill. July 18, 2024) (*Kurowski IV*) (concluding "that Kurowski has plausibly alleged that Rush acted with the conscious desire to knowingly make unauthorized disclosures of her IIHI to Facebook, Google, and Bidtellect for purposes of invoking the crime-or-tort exception. As a result, Rush is not entitled to judgment as a matter of law on her Wiretap Act claim."). Thus, the *Lugo* court "decline[d] to follow *Rodriguez* because its logic is based on three factually dissimilar cases and a previous iteration of *Kurowski*." *Lugo*, 2025 WL 905191, at *8.

*Lugo* is directly on point. Plaintiff plausibly alleges an independent criminal act—disclosing patients' PHI to LinkedIn and Google—and a criminal or tortious motive—disclosing PHI for financial gain, in violation of HIPAA. Compl. ¶¶ 2, 5, 9, 16, 22, 34, 105-106 (Dkt. 1 at 40-41), 110 (Dkt. 1 at 41); *see also Kurowski IV*, 2024 WL 3455020, at *5 ("Many crimes and torts are motivated by a desire to make money, and it defies common sense that a clearly harmful act could escape liability as long as it was done for profit.") (internal quotation omitted); *Cooper v. Mount Sinai Health Sys., Inc.*, 742 F. Supp. 3d 369, 381-82 (S.D.N.Y. 2024) (finding the plaintiff's allegations "plausibly support the inference that [defendant], for commercial ends, intentionally disclosed [IIHI], and thus violated HIPAA, which makes it a crime for a health care provider to disclose [IIHI] for commercial gain").

Accordingly, Plaintiff respectfully submits the Court should follow *Lugo* over *Rodriguez* because "the mere existence of [a] lawful purpose alone does not sanitize a[n interception] that was also made for an illegitimate purpose." *Cooper*, 742 F. Supp. 3d at 378 (internal citations omitted); *accord In re Grp. Health Plan Litig.*, 709 F. Supp. 3d at 719; *Gaige*, 2025 WL 559719, at *5; *see also Lugo*, 2025 WL 905191, at *8 ("The Court declines to follow *Rodriguez* because its logic is based on three factually dissimilar cases and a previous iteration of *Kurowski*. Instead, the Court is persuaded that a plaintiff who has alleged the defendant engaged in a statutory violation, even if for a financial or commercial purpose, has stated a claim for relief under the ECPA and its crime tort exception. … Indeed, many crimes and torts are committed for financial gain. Therefore, having a commercial purpose in addition to the purpose of violating HIPAA or the VHRPA, does not immunize INOVA from Plaintiff's ECPA claims.").

At minimum, Defendants' argument presents an issue of fact inappropriate for resolution on the pleadings. *See Gay*, 2024 WL 4203263, at *4 ("It may be discovery reveals that Defendant had neither a criminal nor tortious intent, but at the motion to dismiss stage Plaintiffs have met their burden for their ECPA claim to survive.").

### B. Defendants Disclosed Individually Identifiable Health Information ("IIHI") To LinkedIn And Google

Defendants argue that Plaintiff's ECPA claim fails because Plaintiff does not "plead facts to establish a HIPAA violation involving the disclosure of her Individually Identifiable Health Information." MTD at 18. That is incorrect.

As conceded by Defendants, "IIHI is limited … to health information that is <u>*both*</u> related to a *specific person's health or condition* and either actually identifies, or is reasonably capable of being used to identify, *that individual*." MTD at 19 (emphasis in original). Plaintiff has alleged both. For example, Plaintiff alleges that "Defendants disclosed her PHI—including the specific

reasons for which she was seeking therapy and information related to her health insurance provider—to LinkedIn and Google for targeted advertising purposes." Compl. ¶ 11; *see also id.* Figures 3-13 (Dkt. 1 at 26-31). Defendants also disclosed information to LinkedIn and Google so that both parties could readily identify Defendants' patients. For example, "[t]he information disclosed by Defendants were accompanied by the lms_ads and li_sugr cookies, whereby LinkedIn could connect the disclosed PHI with the patients' PII." *Id.* ¶ 48 (Dkt. 1 at 26); *see also id.* ¶ 49 (Dkt. 1 at 26-27) ("The information shared by Defendants allows LinkedIn to know the identities of specific individuals as well as information related to the mental health treatment they are receiving. This allows these companies, including Defendants, to profit from this information for targeted advertising purposes.").

Similarly, "Defendants further assist Google by disclosing the PII of its patients sufficient for Google to uncover their identities. In both HTTP communications, like Figures 6, 8-10, and 12-13, the patient's IP address is inherently included in every network request. In addition … Defendants, through Google Analytics, disclosed information about their specific devices and User-IDs to Google, allowing Google to link such information to an individual's specific identity." Compl. ¶ 55 (Dkt. 1 at 31-32); *see also* ¶ 13 ("Google also utilizes other features, such as generating specific User IDs, to track its users across web browsing sessions for identification purposes, as detailed below."); *id.* ¶¶ 76-86 (Dkt. 1 at 23-24) (describing how Google individually identifies users). Such disclosures were made on Defendants' public website, as well as within Defendants' private patient portal. *Id.* ¶¶ 46, 50 (Dkt. 1 at 25, 27). Courts routinely find such disclosures constitute IIHI. *See Tenet Healthcare Corp.*, 2025 WL 1635956, at *23 ("As discussed throughout this order, Plaintiff Jane Doe and Plaintiff John Doe allege Defendants were their healthcare providers, received their communications with Defendants' Web Properties, and

transmitted their PHI and PII to Meta without their authorization. … Because Plaintiff Jane Doe and Plaintiff John Doe allege that the information Defendants disclosed can be used to identify individuals and 'relates to ... the provision of health care,' they have plausibly alleged Defendants intercepted their information with the purpose of violating HIPAA. 42 U.S.C. § 1320d(6). Therefore, Plaintiff Jane Doe and Plaintiff John Doe have sufficiently alleged the ECPA's 'crime-tort exception' applies."). Similar allegations support a violation of the VHRPA. *See Lugo*, 2025 WL 905191, at *6.

Citing *Am. Hosp. Assn., v. Xavier Becerra*, 738 F. Supp. 3d 780 (N.D. Tex. 2024), Defendants argue that Plaintiff's claims rely on "HHS's judicially-vacated interpretation of HIPAA" to trigger the ECPA's crime-tort exception. MTD at 20. That is a red herring. *Becerra* has no bearing on Plaintiff's claims because (1) Plaintiff alleges Defendant violated HIPAA and the VHRPA, not HHS guidance, and (2) Plaintiff alleges collection of far more than her IP address. *See Gaige*, 2025 WL 559719, at *4 ("Defendant argues that because this guidance was vacated by the *American Hospital Association* decision, Plaintiff's claims are based on outdated legal authority. However, as Plaintiff describes in his Opposition, Plaintiff's claims are not premised on a violation of the HHS guidance, but rather are based on violations of various statutes and common law. Thus, the HHS guidance being vacated does not affect the merits of Plaintiff's allegations.") (cleaned up).

For this reason, Defendants' exact argument and reliance on *Becerra* appears to have been rejected by every court to consider it. *See Doe v. Bayhealth Med. Ctr.*, 2025 WL 1010403 (D. Del. Apr. 4, 2025) ("the HHS guidance vacated by *Becerra* has no impact on a plaintiff's disclosure allegations when the plaintiff's claims are based on statutory and common law violations."); *accord J.C. v. Cath. Health Sys. Inc.*, 2024 WL 5136236, at *14 (W.D.N.Y. Aug. 29, 2024), *report*

*and recommendation adopted*, 2025 WL 351043 (W.D.N.Y. Jan. 31, 2025); *see also Nienaber v. Overlake Hosp. Med. Ctr.*, 2025 WL 692097, at *6 (W.D. Wash. Mar. 4, 2025) (distinguishing *Becerra*, holding, "Importantly, Plaintiff also alleges that the information disclosed by Defendant includes the fact that Plaintiff sought and received medical treatment from Defendant. Dkt. No. 49 ¶ 48. The fact that Plaintiff sought and received medical treatment from Defendant is an identification of her status as a patient of Defendant, making this information protected despite originating from Defendant's public website."); *Doe I v. Google LLC*, 2025 WL 1616720, at *2 (N.D. Cal. June 6, 2025) ("That case was an APA challenge to HHS guidance based on the scope of HIPAA, regarding HHS's authority to promulgate that guidance. This case is brought by patients who allege that they have *current* conditions and that their activity on the providers' websites were 'related to' those diagnoses.") (emphasis in original).

Defendants' argument overlooks that here, Plaintiff does not allege IP addresses alone are being disclosed to third parties, but also Client IDs and browser fingerprints, and the information contained within the "li_sugr" and "lms_ads" cookies. Unlike an IP address, this information can be tied to individuals' full names and other PII. Compl. ¶¶ 48-49 (Dkt. 1 at 26), *id.* ¶¶ 76-85 (Dkt. 1 at 23-24). Moreover, here, Plaintiff did not merely browse one of Defendant's public webpages but visited specific pages relevant to the mental health services she received, <u>including activity after she logged into her account portal</u>. Plaintiff booked appointments for highly sensitive and stigmatized medical services, which unequivocally relates to an "individual's receipt of health care." *See* Compl. ¶ 10; *id.* ¶ 47, Figure 4 (Dkt. 1 at 26); 42 U.S.C. § 1320d(6).

Defendants also cite to *Kurowski I* in support of the argument that the HHS Bulletin cannot satisfy the ECPA's crime-tort exception. MTD at 20–21. However, upon the filing of an amended complaint, the court held in *Kurowski III* that the plaintiff's allegations were "sufficient to invoke

the HIPAA exception-to-the party-exception[.]" *See Kurowski III*, 2023 WL 8544084, at *3; and *Kurowski IV*, 2024 WL 3455020, at *6 (concluding "that Kurowski has plausibly alleged that Rush acted with the conscious desire to knowingly make unauthorized disclosures of her IIHI to Facebook, Google, and Bidtellect for purposes of invoking the crime-or-tort exception. As a result, Rush is not entitled to judgment as a matter of law on her Wiretap Act claim.").

Defendants' mischaracterization of *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117 (S.D. Cal. 2023) does not support dismissal either. MTD at 22. The Court in *Howard* aptly explained why the *Cousins* holding is inapplicable to Plaintiff's allegations:

> Unlike the situation Defendants point to in Cousin v. Sharp Healthcare, No. 22-CV-2040-MMA (DDL), 2023 WL 4484441, at *3 (S.D. Cal. July 12, 2023), Plaintiffs here allege that they accessed the Labcorp website at the time that the tracking tools were deployed and entered search terms regarding their sensitive medical issues—some of which are given as examples—that the tracking tools then surreptitiously rerouted to Meta and Google with Plaintiffs' personal identifiers. Because the Amended Complaint, fairly read in Plaintiffs' favor, alleges that these transmissions were automatic and not selective during the relevant times described, the allegation that Plaintiffs entered search terms necessarily means that the content of these search queries were sent to Meta and Google. Thus, the Amended Complaint reasonably alleges that Plaintiffs entered search terms on the website and that all searches related to their "sensitive medical issues" were rerouted to Meta and Google with their personal identifiers as a result.

*Howard*, 2024 WL 4250677, at *9.[4]

Here, Plaintiff alleges that when a patient "select[s] a condition for which they would like to receive treatment, Defendants disclose this information to LinkedIn"; "when a patient logs into their patient portal, Defendants disclose this information to Google"; "similar disclosures are made when patients search for and view prerecorded videos for the treatment of mental health

[4] Of note, after the plaintiffs in *Cousin* amended their allegations, the court found that appointment booking information "plausibly convey information about a present medical condition and the provision of medical care covered by HIPAA." *Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 973 (S.D. Cal. Nov. 17, 2023).

conditions"; and "when patients are scheduling therapy appointments, Defendants disclose this information to Google, including the specific conditions the patient is seeking treatment for and the patient's insurance carrier[.]" Compl. ¶¶ 47, 50-53 (Dkt. 1 at 26-30) (displaying screenshots of data transmissions). None of this is mere browsing activity. *See R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 891 (C.D. Cal. 2024) ("Unlike the plaintiffs in Cousin I, Plaintiffs here provide sufficient factual detail about the actions they took on Defendant's website and adequately alleged that such actions would have resulted in the transmission of their information to Meta without their consent."); *Strong v. LifeStance Health Grp. Inc.*, 2025 WL 317552, at *10 (D. Ariz. Jan. 28, 2025) ("Plaintiffs alleged far more here than the court initially dismissed in *Cousins*. Among other allegations, plaintiffs have plausibly pleaded that LifeStance shared their 'medical information'—like 'the type of medical treatments [they] sought,' and their 'medical conditions'—with Facebook along with the fact that they were waiting for specific providers in an online room (and therefore presumably a patient of a LifeStance mental health provider).").

## IV. PLAINTIFF DID NOT CONSENT TO THE DISCLOSURE OF HER PHI

Defendants argue Plaintiff consented to the disclosures of her protected health information by creating a LinkedIn and Thriveworks account. MTD at 25. That is wrong and belied by Plaintiff's allegations. Compl. ¶¶ 16, 50 (Dkt. 1 at 17), *id.* ¶ 62 (Dkt. 1 at 33), *id.* ¶¶ 110-112 (Dkt. 1 at 41).

As a preliminary matter, what a reasonable consumer would understand if they were on notice of the policies at issue is a question of fact inappropriate for resolution on the pleadings. *See, e.g.*, *Shah v. Capital One Finan. Corp.*, 768 F. Supp. 3d 1033, 1044 (N.D. Cal. Mar. 3, 2025) ("Because the issue of whether Plaintiffs consented to Defendant's disclosure of their personal information is a factual question, the Court need not reach it at the motion to dismiss stage."); *Richmond, F. & P. R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993) ("A motion under Rule

12(b)(6) is intended to test the legal adequacy of the complaint, and not to address the merits of any affirmative defenses [such as consent]."); *Fan v. NBA Properties Inc.*, 2024 WL 1297643, at *3 (N.D. Cal. Mar. 26, 2024) ("Whether reasonable consumers would understand, based on the . . . Terms of Use or . . . Privacy Policy, that by using the . . . website they were consenting to the disclosure of their personally identifiable information . . . is a question that should be resolved on a fuller factual record.").

Importantly, "at the motion to dismiss stage, the Court must give Plaintiffs the benefit of all reasonable inferences," and "where . . . 'the contract language at issue is reasonably susceptible to more than one interpretation, with one of those interpretations suggesting consent and another belying it, the Court cannot decide the consent issue in [Defendants'] favor.'" *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 823 (N.D. Cal. 2020) (quoting *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 789 (N.D. Cal. 2019)). Here, at minimum, there is a question of fact as to whether Defendants even provided Plaintiff with constructive notice of their privacy policy, and whether the policies at issue sufficiently disclose (and thus sufficed as consent for) the wiretapping.

In any event, Defendants' arguments are undermined by their own submissions.

### A. Plaintiff Did Not Consent To The Disclosure Of Her Protected Health Information When She Created Her LinkedIn Account

Defendants claim that Plaintiff consented to LinkedIn's user Agreement, Privacy Policy, and Cookie Policy when creating her account, and therefore consented to LinkedIn's interception of her PHI. MTD at 25. However, Defendants cannot establish that Plaintiff consented to tracking on their Website through the LinkedIn privacy policy because any notice provided to obtain consent must *explicitly* give users notice of the practice at issue. *Calhoun v. Google, LLC*, 113 F.4th 1141,1147 (9th Cir. 2024) (citing *In re Google Inc.*, 2013 WL 5423918, at *12 (N.D. Cal.

Sept. 26, 2013)). "The test is whether a reasonable user who viewed [the] disclosures would have understood that [the party providing the disclosure] was collecting the information at issue." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 793 (citing *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1212 (N.D. Cal. 2014)). Neither policy does so.

LinkedIn's privacy policy states that "we will only collect and process personal data about you where we have a lawful basis." Compl. ¶ 54 (Dkt. 1 at 17). LinkedIn had no lawful basis to receive Plaintiff's PHI because it is specifically protected from disclosure by HIPAA and the VHRPA, and can only be disclosed with the express authorization of Plaintiff. 42 U.S.C. § 1320; 45 C.F.R. §§ 165.508(a), 164.514(b)(2)(i). As such, Plaintiff had no meaningful notice of the nature or extent of the wiretapping alleged and did not consent to such practices. To hold otherwise would require finding that Plaintiff expected LinkedIn would violate its own representations.

Moreover, Defendants ignore their own HIPAA disclosure made to their patients, where they explicitly represent that they will keep their patients PHI "strictly confidential." Compl. ¶ 43, Figure 2 (Dkt. 1 at 24-25). This is crucial, as patients are unaware which webpages contain LinkedIn's tracking technologies, given they are "entirely invisible to a website visitor." *Id.* ¶ 68 (Dkt. 1 at 34). It is also unreasonable for Plaintiff to anticipate Defendants would breach that promise in violation of the law. Courts routinely reject arguments that users consent to the disclosure of protected health information merely by creating a social media account. *See, e.g.*, *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 794 (finding that plaintiffs did not consent to Facebook's interception of their PHI and PII despite plaintiffs agreeing to Meta's Terms of Service).

### B. Defendants' Privacy Policy Does Not Explicitly Notify Patients That Defendants Disclose PHI To Third Parties

Defendants do not even attempt to explain how, if at all, Plaintiff was presented with Defendants' Privacy Policy & Terms of Use. The Declaration of Stefanie Frank (Dkt. 20-1) makes no mention of Plaintiff ever being presented with Defendants' Privacy Policy. On that basis alone, Defendants' Privacy Policy is an inappropriate basis for dismissal. *See Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 512-13 (9th Cir. 2023) ("To form a contract…there must be actual or constructive notice of the agreement and the parties must manifest mutual assent."); *Checchia v. SoLo Funds, Inc.*, 2024 WL 3717491, at *3 (3d Cir. 2024) (finding the "factual evidence is underdeveloped, and both parties have a right to further develop that evidence via formal discovery before the question of whether an agreement…was properly formed.").

Even assuming for argument's sake that Plaintiff was provided notice of Defendants' privacy policy, that policy is not sufficient to provide notice of the disclosures Defendants made because there is no explicit notification that Defendants would disclose PHI to third parties. *See Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 620 (N.D. Cal. 2021) ("In order for consent to be actual, the disclosures must 'explicitly notify' users of the practice at issue."); *In re Google Inc.,* 2013 WL 5423918, at *13 (N.D. Cal. Sept. 26, 2013) ("Google points to its Terms of Service and Privacy Policies, to which all Gmail and Google Apps users agreed, to contend that these users explicitly consented to the interceptions at issue. The Court finds, however, that those policies did not explicitly notify Plaintiffs that Google would intercept users' emails for the purposes of creating user profiles or providing targeted advertising."); *In re Meta Healthcare Litig.*, 647 F. Supp. 3d at 793-94 ("I am skeptical that a reasonable user who viewed Meta's policies would have understood that Meta was collecting protected health information.").

In fact, Defendants' policies warrant the opposite. Defendants rely on a provision in their Privacy Policy related to "Non-Personal Data." MTD at 25. But Plaintiff has explained in detail how the information disclosed by Defendant is, in fact, personally identifiable. Compl. ¶ 13, *id.* ¶¶ 47-48 (Dkt. 1 at 16), *id.* ¶¶ 76-85 (Dkt. 1 at 23-24), *id.* ¶ 48 (Dkt. 1 at 26), *id.* ¶ 55 (Dkt. 1 31-32); *see also Heerde v. Learfield Communications, LLC*, 741 F. Supp. 3d 849, 857 (C.D. Cal. July 19, 2024) ("This court holds that a person's FID can be used to identify that person if the person's Facebook profile is publicly accessible and includes sufficient identifying information."). Additionally, such representations are contradicted by Defendants' other representations regarding its privacy protections of PHI. Compl. ¶ 43 Figure 2 (Dkt. 1 at 24-25). Thus, there is no consent for the disclosures at issue.

Finally, Defendants' reliance on *Smith v. Facebook, Inc.* is misplaced. Unlike here, those claims only concerned mere browsing activity, which did not "reveal details of an individual's health status or medical history." 745 F. App'x 8, 9 (9th Cir. 2018); *see also Silver v. Stripe Inc.*, 2021 WL 3191752, at *4 (N.D. Cal. July 28, 2021) (finding privacy policy sufficiently disclosed the nature of the defendant's data disclosure practices, which were made for the purpose of facilitating online payments through a payment provider).

### C. Plaintiff Plausibly Alleges The "Contents" Of Her Communications Were Intercepted Or Disclosed

Defendants argue that Plaintiff's ECPA and WESCA claims should be dismissed because Plaintiff has not demonstrated that "Defendants intercepted or disclosed the 'contents' of a communication." MTD at 26. Specifically, Defendants argue that "Plaintiff does not plausibly allege that any information concerning her particular medical conditions were disclosed[.]" MTD at 27. That is wrong.

The definition of "content" is the same under the Wiretap Act and other state analogs, such as the WESCA and CIPA. *Byars v. Goodyear Tire & Rubber Co.*, 654 F.Supp.3d 1020, 1027 (C.D. Cal. 2023). "Under the Wiretap Act, 'contents' is defined as 'any information concerning the substance, purport, or meaning of [a] communication.'" *Id.* "[C]ontent" includes "the names of buttons clicked," *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 795, along with "search queries" and "the particular document" requested.

"Content" may also encompass "full-string, detailed URLs" that include "'the particular document within a website that a person views[.]'" *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 605 (9th Cir. 2020); *see also In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1083 (N.D. Cal. 2015) ("URLs (to the extent the URLs contain a user's search terms) implicate 'content' under the Wiretap Act.") (internal citations omitted).

Defendants again mischaracterize Plaintiff's allegations and claim she alleges only "that user IP addresses, device information and information regarding user activity on the Website was collected and disclosed." MTD at 26 (Dkt. 20). But Plaintiff alleges far more than that. *See* Compl. ¶¶ 47, 50-55, Figures 3-13 (Dkt. 1 at 26-30) (displaying screenshots of data transmissions to LinkedIn and Google of conditions they are seeking treatment for, logging into patient portals, searching for and viewing prerecorded videos for the treatment of mental health conditions, and information pertaining to scheduling of therapy appointments, including the specific conditions the patient is seeking treatment for and the patient's insurance carrier).

The information intercepted and disclosed by Defendants conveys the contents of its patients' communications with its Website. *See In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 795; *see also Revitch*, 2019 WL 5485330, at *1; *India Price v. Carnival Corp.*, 712 F.Supp.3d 1347, at 1360 (S.D. Cal. Jan. 19, 2024) (finding that "record information may constitute 'contents'

where 'the record is the subject of a communication....'") (*quoting In re Zynga Priv. Litig.*, 750 F.3d 1098, 1107 (9th Cir. 2014)). Plaintiff further alleges that Defendants disclosed her PHI and PII to LinkedIn and Google, and that she received targeted advertisements for similar products and services after booking an appointment on Defendants' website. Compl. ¶¶ 11-12. By disclosing Plaintiff's PII along with the contents of her communications, LinkedIn and Google are readily able to identify Plaintiff, as discussed *supra.* Plaintiff plausibly alleges that the contents of her communications, along with her PII, were intercepted or disclosed in violation of the ECPA and WESCA.

The authority relied upon by Defendants is inapposite, as the plaintiffs' allegations were too vague and conclusory to establish that the contents of their communications were intercepted. *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082 (N.D. Cal. July 15, 2021) (finding general allegations that third party recorded "keystrokes, mouse clicks, pages viewed, and shipping and billing information" were not contents of a communication); *In re Nickelodeon Consumer Privacy Litig.*, 2014 WL 3012873, at *15 (D.N.J. July 2, 2014) (IP addresses are not content). Here, by contrast, Plaintiffs' detailed allegations are sufficient. *See Howard*, 2024 WL 4250677, at *9 ("Plaintiffs here allege that they accessed the Labcorp website at the time that the tracking tools were deployed and entered search terms regarding their sensitive medical issues—some of which are given as examples—that the tracking tools then surreptitiously rerouted to Meta and Google with Plaintiffs' personal identifiers. Because the Amended Complaint, fairly read in Plaintiffs' favor, alleges that these transmissions were automatic and not selective during the relevant times described, the allegation that Plaintiffs entered search terms necessarily means that the content of these search queries were sent to Meta and Google."); *A.D. v. Aspen Dental Mgmt., Inc.*, 2024 WL 4119153, at *5 (N.D. Ill. Sept. 9, 2024) ("In this case, the URLs at issue include

terms entered into search fields and fillable forms. … This is sufficient to plausibly allege that covered 'content' was intercepted."); *accord In re Grp. Health Plan Litig.*, 2023 WL 8850243, at *7; *Meta Platforms*, 690 F. Supp. 3d at 1076-77; *see also In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 137 (3d Cir. 2015) ("URLs may be dialing, routing, addressing, or signaling information, but only when they are performing such a function." If instead a URL is "part of the substantive information conveyed to the recipient, then by definition it is 'content.'").

### D. Plaintiff's Claims Are Timely

Finally, Defendants claim the delayed discovery doctrine does not apply, and therefore Plaintiff's claims are time barred because the statute of limitations for ECPA and WESCA claims is two years from the date the claimant first has a reasonable opportunity to discover the violation. MTD at 27-30; 18 U.S.C. §2520; 42 Pa. Con. Stat. § 5524(7). That is wrong.

First, questions concerning the delayed discovery doctrine raise factual issues that are not appropriately resolved at the pleading stage. "[A] motion to dismiss filed under Federal Rule of Procedure 12(b)(6), which tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). Whether Plaintiff is entitled to the delayed discovery doctrine is a question of fact determined outside of the pleadings. *Lawrence v. Finicity Corp.*, 716 F. Supp. 3d 851, 892 (E.D. Cal. 2024). As a result, district courts may only resolve a statute of limitations defense at the motion to dismiss stage if "all facts necessary to the affirmative defense 'clearly appear[ ] on the face of the complaint.'" *Lawrence*, 716 F. Supp. 3d at 892 (quoting *Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)).

Second, Plaintiff's claims are timely because she alleges that her "last appointment with her therapist was scheduled through her patient portal on the Thriveworks Website on May 22, 2023." *Id.* ¶ 10. This case was filed within the statute of limitations period.

Third, Plaintiff adequately alleges facts to support the application of the delayed discovery rule because this case involves surreptitious conduct invisible to website users. To properly assert the delayed discovery rule, through fraudulent concealment, Plaintiff must "demonstrate: (1) the party pleading the statute of limitations fraudulently concealed facts that are the basis of the plaintiff's claim, and (2) the plaintiff failed to discover those facts within the statutory period, despite (3) the exercise of due diligence." *Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 548 (4th Cir. 2019) (citing *Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.*, 71 F.3d 119, 122 (4th Cir. 1995)). However, Plaintiff's duty to investigate is only triggered when she has reason to suspect an injury. *Id.* Further, "[a] plaintiff satisfies its burden to allege an affirmative act of concealment if, for example, it alleges that the defendant employed 'some trick or contrivance intended to exclude suspicion and prevent inquiry.'" *Id.* (citing *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 446-47 (6th Cir. 2012)).

Plaintiff's allegations satisfy the Fourth Circuit's standard by alleging: (1) "Defendants had exclusive knowledge that its Website incorporated the Tracking Technologies"; (2) the "tracking Technologies were and are entirely invisible to a website visitor; (3) the Tracking Technologies were used by Defendants "to track and disclose Thriveworks patients' activity, in real time, to third parties LinkedIn and Google"; and (4) that, through the hidden Tracking Technologies, Defendants "secretly disclose[d] Plaintiff's and Class members' sensitive and confidential medical information with third parties." Compl. ¶¶ 2, 5, 68, 71 (Dkt. 1 at 1-2, 34). For this reason, the delayed discovery rule is routinely applied in the wiretapping

context. *See Tenet Healthcare Corp.*, 2025 WL 1635956, at *26 (finding the discovery rule tolled the statute of limitations for the plaintiffs' wiretapping claims where they "allege[d] that when they visited Defendant's Web Properties, they did not know and had no way of knowing that Defendants were intercepting and unlawfully disclosing their PHI and PII to Meta, Google, and other third parties through the use of hidden tracking pixels."); *Balanzar v. Fidelity Brokerage Services, LLC*, 654 F. Supp. 3d 1075, 1083 (S.D. Cal. Feb. 3, 2023) (finding delayed discovery rule is a factual question not appropriately resolved at the pleading stage).

Defendants also contend that Plaintiff "had inquiry notice from as early as July 2022, which is the date of the joint press release issued by the FTC and HHS she cites in her complaint." MTD at 30. This is nonsensical. Plaintiff does not allege that she relied on such disclosures in discovering her claims against Defendants. Nor could she, as the press release provided general warnings to healthcare providers without mentioning Defendants. Nor did the press release expose Defendants' conduct at issue here. *See Edmonson*, 922 F.3d at 555 ("[T]he mere availability of open and readily accessible public records . . . may not suffice by itself to defeat a fraudulent-concealment claim, particularly if a plaintiff lacks ample reason to look at these records.") (internal quotations omitted); *Poppiti v. United Indus. Corp.*, 2020 WL 1433642, at *4 (E.D. Mo. Mar. 24, 2020) ("In this Court's view, defendants' argument that vaguely suggests it is at least theoretically possible for plaintiffs—in the internet age—to discern the truth for themselves goes far beyond what the reasonable opportunity test actually requires."); *accord Bassaw v. United Indus. Corp.*, 482 F. Supp. 3d 80, 88 (S.D.N.Y. 2020).

Critically, the "tracking technologies were and are entirely invisible to a website visitor," and "Defendants had exclusive knowledge that its Website incorporated the Tracking Technologies and yet failed to disclose" the use of such technologies to its patients. Compl. ¶¶ 68,

71 (Dkt. 1 at 33-34). This is in stark contrast to the allegations in *Jurgens*, where there was "no allegation that Defendant concealed its use of unrestricted JavaScripts in its computer code, or that the scripts were undiscoverable." *Jurgens v. Build.com, Inc.*, 2017 WL 5277679, at *6 (E.D. Mo. Nov. 13, 2017).

Finally, Defendants contend that Plaintiff consented to Defendants' disclosure of her sensitive and private health information through her purported consent to Defendants' privacy policy, and that the Website's Privacy Policy & Terms of Use "clearly states that third party tracking technologies were used on the Website, including by third party advertisers, to collect and disclose browsing history concerning use and visits to the Website." MTD at 29. This leads Defendants to the mistaken belief that "the earliest [Plaintiff] would have had access to the Website and its Privacy Policy & Terms of Use therein would have to have been in 2023." MTD at 30. Even if Defendants' privacy policy would lead a reasonable user to inquire further—and it does not—Defendants' own website expressly represents that all PHI is kept "strictly confidential," and that their "professional services and business policies" are governed by relevant state or federal laws—such as HIPAA and VHRPA. Compl. ¶ 43, Figure 2 (Dkt. 1 at 24-25); *id.* ¶ 65 (Dkt. 1 at 33); *see also Doe v. Fullstory, Inc.*, 712 F. Supp. 3d 1244, 1255-56 (N.D. Cal. Jan. 17, 2024) ("However, as discussed above, Favor's policies indicate that the type of personal and healthcare information at issue here would not be shared with third parties. The Favor platform's Privacy Policy cannot, as a matter of law, preclude the application of the discovery rule.").

Therefore, a reasonable Website user would believe that no PHI is being disclosed to third-parties, because that is what HIPAA prohibits *and* what Defendants represent to their patients. Therefore, "the earliest that Plaintiff . . . acting with due diligence, could have reasonably discovered Defendants' conduct would have been shortly before the filing of the Plaintiff's initial

complaint in this matter," was on or around April 2025. Compl. ¶ 74 (Dkt. 1 at 34). Moreover, Defendants fail to cite any authority to support their contention that a reasonable consumer is aware of how to perform complex website analysis (using developer tools), understand the nuances and technicalities of network traffic analysis, and then be able to uncover the unauthorized disclosures at issue here. That is because is it unreasonable.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court deny Defendant's Motion in full.

Dated: August 7, 2025

Respectfully submitted,

By: *__/s/ Joshua Erlich__*
Joshua Erlich

**THE ERLICH LAW OFFICE, PLLC**
Joshua Erlich, VA Bar No. 81298
1550 Wilson Blvd., Ste. 700
Arlington, VA 22201
Tel: (703) 791-9087
Fax: (703) 722-8114
Email: jerlich@erlichlawoffice.com

**BURSOR & FISHER, P.A.**
Alec M. Leslie (admitted *pro hac vice*)
1330 Avenue of the Americas
New York, NY 10019
Telephone: (646) 837-7126
Facsimile: (212) 989-9163
Email: aleslie@bursor.com

*Counsel for Plaintiff*